# FRANKLIN *v.* LYNCH.

ERROR TO THE SUPREME COURT OF THE STATE OF
OKLAHOMA.

No. 553.   Submitted February 25, 1914.—Decided April 6, 1914.

The act of April 21, 1904, c. 1402, 33 Stat. 189, 204, removing restrictions on alienation of lands of non-Indian allottees of the Five Civilized Tribes, did not authorize members of the tribes to sell future acquired property.

Under Rev. Stat., § 2116, no conveyance of an Indian tribe shall be valid except as authorized by treaty, and individual members cannot sell future allotments, as, prior to allotment, there is no individual interest in tribal lands or vendible interest in any particular tract. *Gritts* v. *Fisher*, 224 U. S. 640.

While the act of April 21, 1904, removed some restrictions, it did not permit either members of the tribes or non-Indians to sell mere floats or expectancy.

One who has applied for and been admitted to membership in an Indian. tribe by intermarriage cannot thereafter claim the rights of an Indian as to receiving allotment and the rights of a white non-Indian as to alienation; and all parties dealing with such a person do so with knowledge of the restrictions on alienation imposed by the act of 1902.

As § 642 of Mansfield's Digest, providing that title to subsequently acquired property conveyed shall inure to the benefit of the grantee, was only extended to Indian Territory so far as applicable and not inconsistent with any law of Congress; it has no effect on titles to allotments which, under the act of 1902, cannot be affected by conveyance before patent.

37 Oklahoma, 60, affirmed.

THE facts, which involve the effect of the deed of an, intermarried Choctaw to an allotment to be subsequently acquired, and the construction of acts of Congress affecting the right of allottees to convey, are stated in the opinion.

*Mr. H. A. Ledbetter* for plaintiff in error.

*Mr. S. T. Bledsoe* for defendants in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

Emmer Sisney, a white woman and widow of a Choctaw Indian, applied in 1899 to be admitted as a member of the tribe by intermarriage. Her application not having been granted she employed Franklin & Apple, attorneys at law, to secure her enrollment. As compensation for their services she, on October 16, 1905, by warranty deed conveyed to them her "entire interest in any and all lands, exclusive of homestead, which might finally be allotted to her by the Commissioners of the Five Civilized Tribes." This deed was duly recorded together with an instrument by which she agreed to make conveyance when the land was actually allotted. Thereafter, on November 26, 1906, Emmer Sisney was enrolled as an intermarried citizen of the Choctaw Nation. She promptly made her selection and on December 12, 1906, received a patent to land, all of which, except the homestead, she, on December 14, 1906, sold for value to Lynch & Simmons. Thereupon Franklin, who had acquired Apple's interest under the deed of 1905, brought this suit to have the deed to Lynch & Simmons cancelled as a cloud on his title. The District Court of Oklahoma entered a decree in his favor. That judgment was reversed by the Supreme Court, 37 Oklahoma, 60, and the case is here on a writ of error to review that ruling.

Both parties claim title to land allotted in December, 1906, to a white member of the Choctaw Tribe. The plaintiff has the older warranty deed, but the defendants contend that as it was signed before allotment, the deed was void by virtue of the provisions in the Supplemental Agreement of July 1, 1902 (23 Stat. 641, 642, §§ 15 and 16).

that "lands allotted to members and freedmen [of the Choctaw and Chickasaw Tribes] shall not be affected . . . by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this Act, nor shall said lands be sold except . . . (§ 16) after issuance of patent."

To this the plaintiff replies that, as Emmer Sisney was a white woman, this prohibition against sale by her had been repealed by the act of April 21, 1904 (c. 1402, 33 Stat. 189, 204) which provides that "all restrictions upon the alienation of lands of all, allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood . . ., are, . . . hereby removed."

That statute did not authorize white *members* of the tribe to sell future acquired property, but did permit non-Indian *allottees* to sell what had been actually assigned to them in severalty. (Cf. 34 Stat., § 19, p. 144.) The distinction between a member and an allottee is not verbal but was made in recognition of a definite policy in reference to these lands. The Revised Statutes (§ 2116) declare that no conveyance from an Indian tribe shall be of any validity in law or in equity unless authorized by treaty. As the tribe could not sell, neither could the individual members, for they had neither an undivided interest in the tribal land nor vendible interest in any particular tract. *Gritts* v. *Fisher*, 224 U. S. 640. But in pursuance of the legislation following the Report of the Dawes Commission (*Choate* v. *Trapp*, 224 U. S. 665), provision was made for dividing and distributing the tribal land in severalty among the members of the tribe. But, recognizing the probability of improvident and hasty sales being made, Congress provided that the land could not be sold until after the patent had actually issued, and even then only one-quarter could be sold in one year, three-quarters in three years, and the balance in five years. The act of 1904, relied on by plaintiff, removed some of the re-

strictions and permitted those members of the tribe, who were not of Indian blood, to sell land after it had been actually allotted in severalty. But it did not permit even a non-Indian to sell a mere float or expectancy, since he would not likely receive the full value of what thereafter might be patented to him.

The plaintiff further contends that ever if the deed was inoperative when made, yet as Emmer Sisney was a white woman she had the capacity of a white person of full age to convey an expectancy, so that when she acquired title in 1906 it inured to the benefit of Franklin and Apple, as the grantees under the deed of 1905. But the trouble with this contention is that Emmer Sisney cannot be treated as a white woman, for the purpose of conveying an expectancy, and an Indian for the purpose of securing an allotment. When she applied to be enrolled as a citizen of the Choctaw Nation she, *ipso facto*, subjected herself to the restriction upon alienation of Indian land imposed upon all members of the tribe. All who dealt with her, as to land thereafter allotted to her, were charged with knowledge that the act of 1902 declared that such land should not be affected by any contract made before allotment. The deed of 1905 was therefore a nullity and did not estop her or her assigns from showing that it had been made in direct violation of the statute. For, to permit an Indian's deed, void when made, to operate as a conveyance of title to lands subsequently allotted, would be to disregard the express language of the statute and defeat the protective purposes for which the law was passed. *Starr* v. *Long Jim*, 227 U. S. 613, 624. The result is not changed by the provision of § 642 of Mansfield's Digest that 'if a person, without title, shall convey real estate and subsequently acquire title the legal or equitable estate afterwards acquired shall immediately pass to the grantee as if the estate had been in the grantor at the time of the conveyance.' The chapter of Mansfield's Digest of

Arkansas Law containing this section was extended (32 Stat. 841) to the Indian Territory "so far as the same may be applicable and not inconsistent with any law of Congress." It has no effect here because it is inconsistent with the act of 1902 which declared that Indian land should not be affected by a deed made before patent. The deed to Franklin having been made before allotment was void, and the judgment is

*Affirmed.*