ROBINSON *et al.* v. CALDWELL *et al.*

No. 5165.    Opinion Filed December 7, 1915.

Rehearing Denied February 29, 1916.

(155 Pac. 547.)

1.    **INDIANS—Allotments—Conveyances.**    R. M., an enrolled full-blood Choctaw Indian minor, by his guardian, March 14, 1904, selected his full allotment. R. M. died July 5, 1904, leaving as his sole heir his sister. E., who joined by her husband, A., July 21, 1904, for valuable consideration, executed and delivered to C. a general warranty deed conveying the lands so selected, which deed contained the following provision:

"And we hereby covenant that we are the heirs of the said Ramus Mambi, deceased, who was a duly enrolled member of the Choctaw Tribe of Indians, who died intestate, and the lands above described are the lands selected as his allotive share of the Choctaw-Chickasaw country, in the name of said Ramus Mambi, and that we have the right to sell the lands allotted as aforesaid; and in the event of said allotment being canceled from any cause, this conveyance shall include any and all lands selected in lieu thereof, the same as if specifically described herein."

E. died August 5, 1904, leaving surviving her husband, A., and three children, J. and P., plaintiffs in error, and an infant, E., who survived its mother three weeks. One certificate of selection was delivered to the guardian September 28, the other October

1, 1904. After the deed to C., contest proceedings were instituted, which resulted in the cancellation of the selection and the surrender of the certificates. Thereafter on February 20, 1906, the administrator of R. M.'s estate, in lieu of that canceled, selected the land in controversy, for which patents were issued, recorded, and delivered. C. went into immediate possession of the land last mentioned and continues to hold same by virtue of the deed of July 21, 1904, from E. and her husband, A. **Held**, under this state of facts, the court erred in holding that the deed executed July 21, 1904, by E. (and her husband, A.), full-blood Choctaw heir of R. M., a deceased full-blood Choctaw Indian, operated to convey the land allotted February 20, 1906, in the name of said deceased Indian (following **Franklin v. Lynch et al.,** 223 U. S. 269, 34 Sup. Ct. 505, 58 L. Ed. 954).

2    **SAME—After-Acquired Title.** The after-acquired title of a member of the Choctaw Nation of the full-blood cannot inure to the benefit of her grantee in a deed which, under Act July 1, 1902 (32 Stat. at L. 641, c. 1362) secs. 15, 16, was void when made as to subsequent allotment because executed before allotment, notwithstanding the provision of Mansfield's Ark. Dig. sec. 642, that "if a person without title shall convey real estate and subsequently acquire title, the legal or equitable estate afterward acquired shall immediately pass to the grantee * * * as if * * * the estate had been in the grantor at the time of the conveyance," since this statute was extended to the Indian Territory by the act of February 19, 1903 (32 Stat. at L. 841, c. 707), only so far as "not inconsistent with any law of Congress."

3.    **SAME—Deeds—Validation—Approval of County Court.** Under the above facts the approval of March 12, 1912, of the deed bearing date of July 21, 1904, from E. and A. to C., by the court having jurisdiction of the settlement of R. M.'s estate added no validity.

(Syllabus by Watts, C.)

*Error from District Court, Carter County;*
*S. H. Russell, Judge.*

Ejectment by James Robinson and others against W. E. Caldwell and others. Judgment for defendants, and plaintiffs bring error. Reversed and remanded, with directions.

*Spaulding & Carr* and *L. S. Dolman,* for plaintiffs in error.

*J. W. Hocker*, for defendants in error.

Opinion by WATTS, C.   This is a suit in ejectment from the district court of Carter county, where the plaintiffs in error were plaintiffs below, and the defendants in error were defendants below.   The parties stipulated most of the facts, the material part thereof being, briefly:

Ramus Mambi was an enrolled full-blood Choctaw Indian minor.   His guardian, Peter Going, March 14, 1904, selected his full allotment.   Ramus died intestate July 5, 1904, leaving as his sole heir his sister, Emma Robinson, who, joined by her husband, Amsiah, on July 21, 1904, in consideration of $1,125 paid them, executed and delivered to W. E. Caldwell, the principal defendant in error, a warranty deed, conveying the land so selected, and containing the following provision:

"And we hereby covenant that we are the heirs of the said Ramus Mambi, deceased, who was a duly enrolled member of the Choctaw Tribe of Indians, who died intestate, and the lands above described are the lands selected as his allotive share of the Choctaw-Chickasaw country, in the name of said Ramus Mambi, and that we have the right to sell the lands allotted as aforesaid; and in the event of said allotment being canceled from any cause, this conveyance shall include any and all lands selected 'in lieu' thereof, the same as if specifically described herein."

Emma Robinson died intestate August 5, 1904, and left surviving her husband, Amsiah, and three children, James and Phoebe, plaintiffs in error, and an infant, Emaline, who survived its mother three weeks.

One certificate of selection was delivered to Peter Going, the guardian, September 28, and the other October 1, 1904.   After the deed to Caldwell, contest proceedings were instituted, which were prosecuted without connivance

or collusion on the part of Caldwell; but, on the contrary, he resisted the contest, which, however, resulted in the cancellation of the selection and the surrender of the certificates. Thereafter, and on February 20, 1906, the administrator of Ramus' estate, in lieu of that canceled, duly selected the land in controversy. Patents were issued, recorded, and delivered. Caldwell went into immediate possession of the land last mentioned, and continued to hold the same by virtue of the deed from Emma and Amsiah. The administration of Ramus' estate was pending in, and the court having jurisdiction and settlement thereof was, the county court of McClain county. The county court of McClain county, March 12, 1913, approved the deed last mentioned, which deed and order of approval were immediately filed for record as required by law, but the plaintiffs in error had no actual notice of the approval of the deed and the recording of it and the order of approval.

The case was tried on March 1, 1913, and judgment was that plaintiffs in error take nothing, and for costs for defendants in error. Motion for new trial was overruled, and plaintiffs in error appeal, assigning three alleged errors, but embodying them in the following:

"The court erred in holding that a deed executed on July 21, 1904, by a full-blood Choctaw heir of a deceased full-blood Choctaw Indian operated to convey the land allotted February 20, 1906, in the name of said deceased Indian."

It seems to us that the case of *Franklin v. Lynch et al.*, 233 U. S. 269, 34 Sup. Ct. 505, 56 L. Ed. 954, is decisive of the question, and fully answers the argument of defendants in error, and we can do no better than quote:

"Emmer Sisney, a white woman and widow of a Choctaw Indian, applied in 1899 to be admitted as a member

of the tribe by intermarriage.  Her application not having been granted, she employed Franklin & Apple, attorneys at law, to secure her enrollment.  As compensation for their services she, on October 16, 1905, by warranty deed conveyed to them her 'entire interest in any and all lands, exclusive of homestead, which might finally be· allotted to her by the Commissioners of the Five Civilized Tribes.' This deed was duly recorded together with an instrument by which she agreed to make conveyance when the land was actually allotted.  Thereafter, on November 26, 1906, Emmer Sisney was enrolled as an intermarried citizen of the Choctaw Nation.  She promptly made her selection and on December 12, 1906, received a patent to land, all of which, except the homestead, she, on December 14, 1906, sold for value to Lynch & Simmons.  Thereupon Franklin, who had acquired Apple's interest under the deed of 1905, brought this suit to have the deed to Lynch & Simmons canceled as a cloud on his title.  The district court of Oklahoma entered a decree in his favor.  That judgment was reversed by the Supreme Court,  *  *  *  and the case is here on a writ of error to review that ruling.

"Both parties claim title to land allotted in December, 1906, to a white member of the Choctaw Tribe.  The plaintiff has the older warranty deed, but the defendants contend that as it was signed before allotment, the deed was void by virtue of the provision in the Supplemental Agreement of July 1, 1902 (32 Stat. at L. 641, secs. 14 and 16, c. 1362), that 'lands allotted to members and freedmen [of the Choctaw and Chickasaw Tribes] shall not be affected  *  *  *  by any deed, debt, or obligation of any character contracted prior to the time at which said lands may be alienated under this act, nor shall said lands be sold except  *  *  *  (section 16) after issuance of patent.'  To this the plaintiff replies that, as Emmer Sisney was a white woman, this prohibition against sale by her had been repealed by the act of April 21, 1904 (33 Stat. at L. 204, c. 1402), which provides that:  'All restrictions upon the alienation of lands of all allottees of  *  *  ·*  the Five Civil-

ized Tribes of Indians, who are not of Indian blood  *  *
*  are,  *  *  *  hereby removed.'

"That statute did not authorize white members of the
tribe to sell future-acquired property, but did permit non-
Indian allottees to sell what had been actually assigned to
them in severalty. Cf. 34 Stat. at L. sec. 19, p. 144, c.
1876. The distinction between a member and an allottee
is not verbal, but was made in recognition of a definite
policy in reference to these lands. The Revised Statutes
(section 2118 [U. S. Comp. St. 1913, sec. 4108]) declare
that no conveyance from an Indian tribe shall be of any
validity in law or in equity, unless authorized by treaty. ·
As the tribe could not sell, neither could the individual
members, for they had neither an undivided interest in
the tribal land nor vendible interest in any particular tract.
*Gritts v. Fisher,* 224 U. S. 641, 32 Sup. Ct. 580, 56 L. Ed.
931. But in pursuance of the legislation following the
Report of the Dawes Commission (*Choate v. Trapp,* 224
U. S. 665, 56 L. Ed. 941, 32 Sup. Ct. 565), provision was
made for dividing and distributing the tribal land in
severalty among the members of the tribe. But, recog-
nizing the probability of improvident and hasty sales being
made, Congress provided that the land could not be sold
until after the patent had actually issued, and even then
only one quarter could be sold in one year, three quarters
in three years, and the balance in five years. The act of
1904, relied on by plaintiff, removed some of the restric-
tions and permitted those members of the tribe, who were
not of Indian blood, to sell land after it had been actually
allotted in severalty. But it did not permit even a non-
Indian to sell a mere float or expectancy, since he would
not likely receive the full value of what thereafter might
be patented to him.

"The plaintiff further contends that even if the deed
was inoperative when made, yet as Emmer Sisney was a
white woman she had the capacity of a white person of full
age to convey an expectancy, so that when she acquired
title in 1906 it inured to the benefit of Franklin & Apple,

as the grantees under the deed of 1905.   But the trouble with this contention is that Emmer Sisney cannot be treated as a white woman, for the purpose of conveying an expectancy, and an Indian for the purpose of securing an allotment.   When she applied to be enrolled as a citizen of the Choctaw Nation she, *ipso facto,* subjected herself to the restriction upon alienation of Indian land imposed upon all members of the tribe.   All who dealt with her, as to land thereafter allotted to her, were charged with knowledge that the act of 1902 declared that such land should not be affected by any contract made before allotment. The deed of 1905 was therefore a nullity and did not estop her or her assigns from showing that it had been made in direct violation of the statute.   For, to permit an Indian's deed, void when made, to operate as a conveyance of title to lands subsequently allotted, would be to disregard the express language of the statute and defeat the protective purposes for which the law was passed.   *Starr v. Long Jim,* 227 U. S. 624, 33 Sup. Ct. 358, 57 L. Ed. 675.   The result is not changed by the provision of section 642 of Mansfield's Digest that 'if a person, without title, shall convey real estate and subsequently acquire title, the legal or equitable estate afterwards acquired shall immediately pass to the grantee as if the estate had been in the grantor at the time of the conveyance.'   The chapter of Mansfield's Digest of Arkansas Laws containing this section was extended (32 Stat. at L. 841, c. 707) to the Indian Territory 'so far as the same may be applicable and not inconsistent with any law of Congress.'   It has no effect here because it is inconsistent with the act of 1902, which declared that Indian land should not be affected by a deed made before patent.   The deed to Franklin having been made before allotment was void, and the judgment is affirmed."

See, also, *Bledsoe v. Wortman et al.,* 35 Okla. 261, 129 Pac. 841.

The case of *Mann, etc., v. Wilson,* 23 How. 457, 16 L. Ed. 584, and other cases cited are not in point, because

the treaty therein did not contain an inhibition against deeds, contracts, etc., as herein.

It also follows that in as much as the deed was invalid, the approval of the county court added no validity. There are many equities under the facts in the case with the defendants in error, but *Franklin v. Lynch et al., supra,* is binding on this court.

Therefore, for the reasons mentioned, we recommend that the judgment of the trial court be reversed, that the case be remanded, and the district court enter judgment for the plaintiffs in error.

By the Court: It is so ordered.