## MULLEN *et al.* v. GARDNER *et al.*

No. 6240. Opinion Filed April 11, 1916.

(156 Pac. 1160.)

**INDIANS—Indian Lands—Conveyance by Heirs—Validity.** A deed of general warranty executed in 1906 by the heirs of a deceased enrolled member of the Choctaw tribe of Indians, purporting to convey certain lands which an administrator had attempted to select in the name of such deceased, and which were involved in contest, contained a covenant to the effect that if said lands were finally awarded to others as the result of such contest, other lands of equal appraised value should be selected in lieu thereof, and the title thereto pass by said deed to the grantees therein, or, if required, such grantor heirs would execute a subsequent deed so conveying the lands to be thus selected. **Held,** that such deed is inoperative and void as a conveyance of, or contract to convey, lands allotted in the name of such deceased in 1910, and which at the date of the deed constituted part of the tribal domain.

(Syllabus by Bleakmore, C.)

*Error from District Court, Stephens County;*
*Frank M. Bailey, Judge.*

Action by L. V. Mullen and another against Anderson Gardner and another. Judgment for defendants, and plaintiffs bring error. Affirmed.

*H. A. Ledbetter,* for plaintiffs in error.

*R. C. Martin* and *Womack & Brown,* for defendants in error.

Opinion by BLEAKMORE, C. Wilkin Gardner, an enrolled member of the Choctaw Tribe of Indians, died in 1905, prior to the selection of his allotment. On January 3, 1906, application was regularly made by the duly appointed administrator of his estate, Howard McBride, to select and have certain lands allotted in his name; but, it appearing that such lands had been previously selected as

portions of the allotments of other members of his tribe, said administrator immediately instituted contest proceedings to have determined his right to select the same in the name of said decedent. On January 6, 1906, the heirs of said Wilkin Gardner executed deeds of general warranty, purporting to convey to the grantees therein the lands so attempted to be selected by said administrator and involved in contests. The deeds contain the following provision:

"* * * And if for any reason the said land hereinbefore filed upon, selected and allotted to the said Wilkin Gardner, shall be adjudged by any tribunal not to be the lands of the said Wilkin Gardner, that in that event the said Howard McBride, or his successor, shall select, file upon and allot other lands of equal appraised value of that described herein, and all of the warranties and covenants herein shall extend to and cover said land so selected, filed upon and allotted and that this conveyance shall extend to and convey all of said land, and if for any reason it should be necessary for another deed to be executed in order for a title in fee simple to pass to the said J. S. and L. V. Mullen, then in that event we do for ourselves, our heirs, executors and administrators represent and warrant unto the said J. S. and L. V. Mullen, their heirs and assigns that we will execute such a deed conveying the same as aforesaid."

The administrator ultimately failed in the contest proceedings, and the lands for which he had applied were awarded to the contestees. Thereafter, in 1910, other lands of equal appraised value were allotted in the name of said Wilkin Gardner, deceased, in lieu of those embraced in the proposed selection by the administrator and described in the deeds of said heirs. By virtue of the foregoing provision in said deeds, plaintiffs in error assert

title to the lands actually allotted in the name of said deceased.

By act of Congress approved July 1, 1902, 32 Stat. 641, c. 1362, and ratified by the Choctaw and Chickasaw Nations September 25, 1902, known as the Supplemental Agreement, it is provided:

Sec. 11. "There shall be allotted to each member of the Choctaw and Chickasaw Tribes, as soon as practicable after the approval by the Secretary of the Interior of his enrollment as herein provided, land equal in value to three hundred and twenty acres of the average allotable land of the Choctaw and Chickasaw nations. * * *"

Sec. 15. "Lands allotted to members and freedmen shall not be affected or incumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this act, nor shall said lands be sold, except as herein provided."

Sec. 22. "If any person whose name appears upon the rolls, prepared as herein provided, shall have died subsequent to the ratification of this agreement and before receiving his allotment of land the lands to which such person would have been entitled if living shall be allotted in his name, and shall, together with his proportionate share of other tribal property, descend to his heirs according to the laws of descent and distribution as provided in chapter forty-nine of Mansfield's Digest of the Statutes of Arkansas: Provided, that the allotment thus to be made shall be selected by a duly appointed administrator or executor. * * *" (32 Stat. 642, 643.)

The sole question presented for our consideration is whether the deeds made by the heirs of Wilkin Gardner on January 6, 1906, operated to convey the lands allotted in his name in 1910. It is conceded that, no restrictions upon the right of alienation existing, had the lands described elsewhere therein been allotted at the date thereof,

said deeds would have passed title thereto. *Mullen v. U. S.,* 224 U. S. 457, 32 Sup. Ct. 494, 58 L. Ed. 834. But it is urged by defendants in error that said deeds were ineffective to convey title to the then unallotted lands which it was contemplated might be, and in fact were, subsequently selected in the name of the deceased, for the reason that no inheritable right could exist in tribal lands. Speaking to the point involved, this court, in *Bledsoe v. Wortman et al.,* 35 Okla. 261, 129 Pac. 841, quoted with approval the language used by the United States Court of Appeals for the Eighth Circuit, in *McKee v. Henry,* 201 Fed. 74, 119 C. C. A. 412, as follows:

"The Muskogee or Creek Tribe was in the nature of a dependent nation, and, as our national public buildings belong to the nation, the citizen, while he has an interest in them, has no share in the title to them, so these lands, so far as the Indian title was concerned, belonged to the tribe as a community, and no separate Indian had any title whatever severally or as a tenant in common. No law or agreement to divide the lands in severalty had any effect to create such a title until the lands were actually allotted. All these laws contemplated that the tribe, through its members, would receive substantially the whole reservation in lands or money. If the right to lands was vested after enrollment, and before allotment, then why was the interest of the Indians not actually vested in the remaining lands and money? Yet it was expressly held in *Gritts v. Fisher,* 224 U. S. 640, 32 Sup. Ct. 580, 56 L. Ed. 928, that the interest in the remaining lands and money was not vested, and that new participants could be added by Congress. The enrolling primarily established the right of citizenship, and only incidentally conferred the right to allotment, and, until allotment was made, no inheritable right vested in the individual Indian. * * * When the allotment was made, for the first time the rights of any individual vested, and the title became vested in

the one at that time fixed by the law, and it makes no difference what previous laws may have provided."

In *Hooks v. Kennard,* 28 Okla. 457, 114 Pac. 744, Mr. Justice Kane, speaking for the court, said:

"This court has held in several cases that the selection of and the filing upon an allotment of land was the inception and beginning of the title of the allottee or his heirs, and that, when the patent which is only the evidence of title is issued, it relates back to the inception of the title. *De Graffenreid v. Iowa Land & T. Co.,* 20 Okla. 687, 95 Pac. 624; *Godfrey v. Iowa Land & T. Co.,* 21 Okla. 293, 95 Pac. 792; *Irving et al. v. Diamond,* 23 Okla. 325, 100 Pac. 557."

In *Stephens v. Cherokee Nation,* 174 U. S. 445, 19 Sup. Ct. 722, 43 L. Ed. 1041, with reference to the lands of the Choctaw and Chickasaw Tribes, as well as those of the other Five Tribes, it was said:

"The lands and moneys of these tribes are public lands and public moneys, and are not held in individual ownership, and the assertion by any particular applicant that his right therein is so vested as to preclude inquiry into his status involves a contradiction in terms."

In *Franklin v. Lynch,* 233 U. S. 269, 34 Sup. Ct. 505, 56 L. Ed. 954 (affirming *Lynch v. Franklin,* 37 Okla. 60, 130 Pac. 599), it is said:

"* * * The Revised Statutes (section 2118 [U. S. Comp. St. sec. 4108]) declare that no conveyance from an Indian tribe shall be of any validity in law or in equity unless authorized by treaty. As the tribe could not sell, neither could the individual members, for they had neither an undivided interest in the tribal land nor vendible interest in any particular tract."

See, also, *Wallace v. Adams,* 143 Fed. 716, 74 C. C. A. 540; *Sanders v. Sanders,* 28 Okla. 59, 117 Pac. 338;

*Robinson et al. v. Caldwell et al.,* 55 Okla. 701, 155 Pac. 547.

In *Mullen et al. v. Pickens et al.,* 56 Okla. 65, 155 Pac. 871, it was held:

"A warranty deed from a restricted full-blood Choctaw Indian of September 23, 1905, whereby she conveyed all her interest in and to the theretofore selected allotment of her deceased mother, and which deed contained a provision: 'That I further warrant and covenant with the said J. S. Mullen and L. V. Mullen and W. M. Bonner, that if for any reason the allotment of the said Eliza Bell, deceased, as described, be canceled, set aside, and held for naught, and afterwards be filed at any point in the Choctaw or Chickasaw country, that this deed and its warranties and covenants shall apply to said lands so hereafter selected the same as if it were described in this instrument, and if it be necessary for me to hereafter execute the deed to the lands so selected, I hereby covenant and warrant to the said J. S. Mullen and L. V. Mullen, their heirs, legal representatives, and assigns that I will so execute said deed'—did not by virtue of said provision, when subsequent thereto the selection of the land particularly described in the deed was canceled and annulled by the proper authorities, convey an equitable title to such after allotted land, concerning which Malinda Pickens will be required to specifically perform. And where the pleadings show the above state of facts, it is not error for the court to sustain demurrer to the answer and award judgment for the plaintiff."

The power to alienate allotted lands is recognized as an inherent property right which may be exercised by congressional enactment, but is entirely foreign to the power to sell tribal property, which exists only by virtue of specific federal authorization.

It is established that before the same was selected and set apart to him in the prescribed manner, a living

member, was denied any right to convey the distributive share of tribal lands to which his enrollment entitled him; and a declaration of its purpose by statute in unequivocal terms would be required to convince us that, by permitting his heirs to succeed to such share in the event of his death before its selection, Congress intended that they should acquire with regard thereto a right, withheld from all others, to alienate the same while the title remained in the tribe. It is solely by virtue of section 22 of the act of July 1, 1902, *supra*, that the heirs of a deceased member succeed to his right to share in the distribution of tribal property provided for by that and prior federal legislation; and clearly it was not contemplated thereby that such heirs should take, as by descent, a present estate in tribal lands such as could never have been enjoyed by the one through which it came. But the obvious purpose of such enactment was to provide for the transmission of title to the particular lands, and proportionate share of other property, to which a deceased member of the tribe would have been entitled had he survived, only when the same should become individual, as contradistinguished from tribal property, by being selected and allotted in his name.

We therefore conclude that, notwithstanding they contained covenants expressly to that effect, the deeds by the heirs of Wilkin Gardner of January 6, 1906, were inoperative and void as conveyances of, or contracts to convey, the lands subsequently allotted in his name, and which at the date thereof constituted part of the tribal domain. Such was the view of the trial court, and its judgment should be affirmed.

By the Court: It is so ordered.