## PROBERT v. KIBBY et al.

No. 10806—Opinion Filed Oct. 3, 1922.

(Syllabus.)

1. **Indians—Conveyances of Restricted Land —After-Acquired Title.**

The general rule that a deed of general warranty conveys the after-acquired title of the grantor has no application to restricted Indian lands.

2. **Same.**

Where J., a Chickasaw Indian by blood, being the allottee of the land in controversy, died leaving as his sole heir C., his father, who was a full-blood Chickasaw Indian, and by act of Congress the alienation of the land was restricted because C. was a full-blood Chickasaw Indian, held, that a warranty deed executed by the children of C. during his life-time, who were one-half blood Chickasaw Indians and unrestricted, did not convey their after-acquired title which they inherited on the death of C.

Error from District Court. Pontotoc County; J. W. Bolen, Judge.

Action by John W. Probert, against F. P. Kibby et al. to foreclose a real estate mortgage. Judgment in favor of certain defendants quieting title to the land, and plaintiff appeals. Affirmed.

D. M. Tibbetts and Fred W. Green, for plaintiff in error.

B. C. King, R. H. Couch, and Reuben M. Roddie, for defendants in error.

MILLER, J. This action was commenced in the district court of Pontotoc county by John W. Probert, as plaintiff, to recover a judgment against F. P. Kibby, M. R. Kibby, and G. W. Johnston personally, and to foreclose a mortgage decreeing it to be a lien on the land in controversy. The case was tried to the court on an agreed statement of facts, which resulted in a judgment denying the plaintiff the relief sought, and a decree was rendered quieting the title to the land in certain of the defendants. From this judgment the plaintiff appeals and appears here as plaintiff in error. For convenience, the parties will be referred to as they appeared in the lower court. The stipulation on which this case was tried and upon which all of the parties rely in this court, omitting the caption, reads as follows:

"Stipulation.

"It is hereby stipulated and agreed by and between John W. Probert, by and through his attorney of record, B. H. Epperson, of Ada, and Tibbetts and Green, of Guthrie. Okla., plaintiff, and Reuben M. Roddie. Cora Y. Roddie, and H. F. Reed. by and through

their attorneys of record, Reuben M. Roddie and B. C. King, that the following stipulation constitutes the facts in the above styled cause in so far as the plaintiff and the defendants, Reuben M. Roddie, Cora Y. Roddie, and H. F. Reed are concerned:

"(1) That the subject of this litigation is for N.W.¼ of section thirty-five (35), township five (5) north, range six (6) east, situated in Pontotoc county, state of Oklahoma.

"(2) That said lands were allotted to one Jynson Nelson, a Chickasaw Indian by blood, that said land was filed on by the said Jynson Nelson, during his lifetime.

"(3) That on or about the 5th day of March, 1904, the said Jynson died without issue, and left surviving him his father, Chillie Nelson, a full-blood Chickasaw Indian, duly enrolled as such upon the tribal roll No. 4826 (his mother being dead and not being enrolled citizen of the Chickasaw or Choctaw Nation); also Silas Nelson, Maggie Stick, nee Nelson, Albert Nelson, and Adeline Walker, nee Nelson, Cornelius Nelson, his brothers and sisters, who were half-blood Chickasaw Indians, duly enrolled as such upon the tribal rolls of the Chickasaw Nation.

"(4) That after the death of said Jynson Nelson, to wit, on the 28th day of June, 1907, Chillie Nelson, Silas Nelson, Maggie Nelson (now Maggie Stick), and Albert Nelson executed a warranty deed, containing full covenants of title, to said lands to the American Trust Company, a corporation, said deed being recorded July 1, 1907; and thereafter, on the 11th day of April, 1908, Adeline Nelson (now Adeline Walker) executed a warranty deed, containing full covenants of title, to her interest in said land to the American Trust Company, a corporation, said deed being recorded April 14, 1908; that thereafter, on the 11th day of May, 1908, the American Trust Company executed a warranty deed, containing full covenants of title, to one F. P. Kibby, said deed being recorded May 13, 1908, and that F. P. Kibby and his wife, M. P. Kibby, on or about the 7th day of May, 1908, executed the mortgage sued upon, to the Mortgage and Debenture Company, Limited, said mortgage being recorded May 14, 1908, and the plaintiff herein is now, by assignment duly made, the lawful owner and holder of the said mortgage and entitled to maintain this action in his name by reason of said assignment.

"(5) That the deed executed by Chillie Nelson on the 28th day of June, 1907, was never approved by the Secretary of the Interior, nor the county court of Pontotoc county, it being the court having the jurisdiction of the settlement of the estate of Jynson Nelson, deceased, he having died before statehood, and in what is now Pontotoc county, state of Oklahoma.

"(6) That on or about the 6th day of August, 1913, Chillie Nelson, by his guardian, George A. Harrison, instituted suit in the district court of Pontotoc county, state of Oklahoma, for possession of said lands, and cancellation of all deeds against same, and that on the 11th day of May, 1914, the court rendered judgment in favor of Chillie Nelson for the possession of said land and cancellation of said deeds; but that neither the Mortgage and Debenture Company, Limited, nor the plaintiff in this action were parties to said action therefor; and under said judgment, the said Chillie Nelson went into possession of said lands by and through his said guardian, George A. Harrison, and remained in possession thereof up to and including the 10th day of November, 1915, at which time the said Chillie Nelson died and left surviving him, as his sole and only heirs, Cornelius Nelson, Silas Nelson, Maggie Stick, nee Nelson, Albert Nelson, and Adeline Walker, nee Nelson.

"(7) That after the death of Chillie Nelson, his heirs, Cornelius Nelson, Silas Nelson, Maggie Stick, nee Nelson, and Adeline Walker, nee Nelson, executed a warranty deed to their interest in said lands to H. F. Reed on the 18th day of November, 1915; and Albert Nelson executed a warranty deed to his interest in said land on the 12th day of November, 1915, to Gale Statler; and that Gale Statler thereafter, on the 2nd day of December, 1915, executed a warranty deed in his interest in said land to H. F. Reed.

"(8) That thereafter, and on or about the 24th day of May, 1915, Reuben M. Roddie, claiming an interest in said lands by reason of an attorney's contract having been made with George A. Harrison, as the guardian of said Chillie Nelson, which contract was approved by the county court of Pontotoc county, filed in the district court of Pontotoc county a suit against the said H. F. Reed for partition, and that the said Reuben M. Roddie recovered judgment in said action according him a one-half undivided interest therein, and that the court thereafter appointed commissioners to partition said lands, and that the commissioners awarded to the said Reuben M. Roddie, the E. ½ of the N.W.¼ and the E.½ of the W.½ of E.½ of N.W.¼ and the E.½ of the W.½ of the W.½ of the E.½ of the N.W.¼ of section thirty-five (35), township five (5) north, range six (6) east, containing 70 acres; and that the said L. M. Walker is the owner of that portion of the land formerly owned by R. M. Roddie, and described above in this section, and that the defendant H. F. Reed is the owner of the remainder of the said N. W. ¼ of sec. 35, twp. 5 N., R. 6 E. containing 90 acres.

"These being the facts in this cause, it is hereby agreed and stipulated that the above constitutes all the facts herein, and that the only question to be determined is whether or not, by virtue of the deeds executed by Cornelius Nelson, Silas Nelson, Maggie Stick, nee Nelson, Albert Nelson, and Adeline Walker, nee Nelson, and the mortgage based upon that title now held by the plaintiff herein, the after-acquired title obtained by the above-

named grantors upon the death of Chillie Nelson inured to the benefit of the plaintiff, as the holder of the above-mentioned mortgage. In other words, does the fact that the above-mentioned grantors were Indians, not under restriction at the time of the original or subsequent conveyance, vary the rule as to the inurement of an after-acquired title for the benefit of their grantees and subsequent incumbrancers?

"Respectfully submitted,
"(Signatures of attorneys for parties)".

In rendering judgment on the stipulated facts the trial court defined the rights of the parties under the law as follows:

"The court is of the further opinion that the lands claimed by the defendant L. M. Walker, to wit: (describing seventy acres of the land), are in no way affected by the law governing after-acquired titles in real estate; the said L. M. Walker, having acquired his title from the said Reuben M. Roddie, who acquired his title to said real estate through Chillie Nelson, by and through his guardian, George A. Harrison, a full-blood Chickasaw Indian, Roll No. _____, during the life of the said Chillie Nelson, and that the law governing after-acquired title would in no way affect the title to said property in the defendant L. M. Walker.

"The court further finds that the lands claimed in this action by H. F. Reed, and described as follows, to wit: (describing ninety acres of land), was acquired by the defendant H. F. Reed from the heirs of Chillie Nelson, after his death; that although the heirs of the said Chillie Nelson had executed a deed to the lands in controversy before the death of the said Chillie Nelson, and they being ½ full-blood Chickasaw Indians, that their deed conveyed no interest in said lands, for the reason that his heirs at the time of the execution of said deed had no interest in said lands which could be by them conveyed, and that the deed executed by the heirs of Chillie Nelson after his death to the defendant H. F. Reed conveyed the legal title to said lands to the defendant H. F. Reed, free and clear of any legal incumbrances whatsoever."

We agree with the trial court. In the last paragraph of the stipulation it is agreed that the only question to be determined is whether or not the after-acquired title of the heirs of Chillie Nelson inured to the benefit of the plaintiff by virtue of the deeds executed by said heirs on June 28, 1907, and that is the only question we will attempt to pass upon.

The plaintiff relies on the case of Holleman v. Cushing, 84 Okla. 156, 202 Pac. 1029. He cites text-book authority and opinions from other states upholding the doctrine laid down in Holleman v. Cushing, supra, but this case did not have an Indian question involved, and, under our view, does not reach the question presented in the case at bar.

Under the agreed statement of facts, on the death of Jynson Nelson, the allottee, Chillie Nelson, a full-blood Chickasaw Indian, became the owner of all of said allotment. The brothers and sisters of the one-half blood did not inherit any interest in the land. Chillie Nelson could only convey title to said land by a deed duly approved by the Secretary of the Interior or the county court of Pontotoc county. The restrictions run with the land. Mann v. Brady, 80 Okla. 299, 196 Pac. 346.

Chillie Nelson, as owner of this land, at the time of the execution of the deeds in question, could only convey it by complying with the regulations prescribed by the act of Congress. Any deed he might make that did not comply with the act of Congress would be absolutely void. The land was not subject to barter and sale as other lands upon which there were no restrictions. As Chillie Nelson's deed would have been void because the restrictions run with the land, it necessarily follows that any other deeds would likewise be void. Indian land protected by restrictions imposed by the acts of Congress, so long as such a restriction exists, is land to which the eye of the purchaser need never turn, for it is not subject to barter and sale in the commercial world. It has been repeatedly held that a deed made by a restricted Indian does not convey the after-acquired title. Berry v. Summers, 35 Okla. 426, 130 Pac. 152; Robinson v. Caldwell, 55 Okla. 701, 155 Pac. 547.

If the land was restricted in the owner, Chillie Nelson, he being a full-blood, and therefore it was withheld from commerce, and any attempted conveyance of said land was void, the warranty of title was likewise void, and could not be used as a vehicle of conveyance and thereafter be given validity so as to convey an after-acquired title. In order that a deed shall convey an after-acquired title, it is essential that the land sought to be conveyed must be alienable, and the grantor must have the right to execute the same. It is also essential that the deed through which a person attempts to assert an after-acquired title must not in any way contravene public policy. This deed is in direct violation of the congressional policy in dealing with the Indian lands. It was never intended by Congress that the members of the Five Civilized Tribes should sell their expected inheritance in the lands of the respective Indian Nations. In the case of Brown v. Minshall, 83 Okla. 98, 202 Pac. 1037, Kennamer, J., in a very able opinion, uses the following language:

"We conclude that, on the date of the execution of the lease and deed in question in the case at bar, the only interest that the plaintiff, Louisa Brown, nee Berryhill, could convey was such interest as she was authorized by the Congress to convey, and in the manner as prescribed in the act of May 27, 1908, and such title as she was then vested with, and the title to that part of the allotment in controversy in this cause being vested on the date of the execution of the instruments in Charley Berryhill, and the plaintiff being a restricted full-blood Indian, her deed and lease had no legal effect except to convey such right and interest as the plaintiff was vested with at that time, and that the deed and lease can in no way operate so as to affect the after-acquired title of the plaintiff in her inheritance of the one-fourth interest in question here from her deceased child, Charley Berryhill. The rule of estoppel and after-acquired title has no application to restricted Indian lands, which are not subject to the rules of trade as applied to lands purchasable in the ordinary everyday market."

It will be noticed that in the last sentence above quoted it is said:

"The rule of estoppel and after-acquired title has no application to restricted Indian lands."

It does not stop by saying restricted Indians, but it says restricted Indian lands. At the time of the execution of the deeds through which the plaintiff claims the benefit of the after-acquired title, the property in controversy was restricted Indian lands.

In the case of Lynch v. Franklin, 37 Okla. 60, 130 Pac. 599, Robertson, C., in subdivision (d) of paragraph one of the syllabus, said:

"(d) The 'doctrine of relation' as found in section 642, Mansf. Dig. of Arkansas, cannot be invoked in this case, for it was not only necessary to pass title to subsequently acquired property that the contract at the time of its execution must be valid, but also the property sought to be conveyed must be alienable, and the grantor must have the right to execute the same, none of which conditions existed in this case."

This case was appealed to the Supreme Court of the United States, and there was styled "Wirt Franklin v. C. S. Lynch," and is reported in 233 U. S. 269, 58 L. Ed. 954, in which the following rule was announced:

"That statute did not authorize white members of the tribe to sell future-acquired property, but did permit non-Indian allottees to sell what had been actually assigned to them in severalty. Cf. 34 Stat. at L., sec. 19, p. 144, chap. 1876. The distinction between a member and an allottee is not verbal, but was made in recognition of a definite policy in reference to these lands. The Revised Statutes (sec. 2118) declare that no conveyance from an Indian tribe shall be of any validity in law or in equity unless authorized by treaty.

As the tribe could not sell, neither could the individual members, for they had neither an undivided interest in the tribal land nor vendible interest in any particular tract. Gritts v. Fisher, 224 U. S. 641, 56 L. Ed. 931, 32 Sup. Ct. Rep. 580. But in pursuance of the legislation following the report of the Dawes Commission (Choate v. Trapp, 224 U. S. 665, 56 L. Ed. 941, 32 Sup. Ct. Rep. 565), provision was made for dividing and distributing the tribal land in severalty among the members of the tribe. But, recognizing the probability of improvident and hasty sales being made, Congress provided that the land could not be sold until after the patent had actually issued, and even then only one-quarter could be sold in one year, three-quarters in three years, and the balance in five years. The act of 1904, relied on by plaintiff, removed some of the restrictions, and permitted those members of the tribe who were not of Indian blood to sell land after it had been actually allotted in severalty. But it did not permit even a non-Indian to sell a mere float or expectancy, since he would not likely receive the full value of what thereafter might be patented to him.

"The plaintiff further contends that, even if the deed was inoperative when made, yet, as Emmer Sisney was a white woman, she had the capacity of a white person of full age to convey an expectancy, so that when she acquired title in 1906 it inured to the benefit of Franklin and Apple, as the grantees under the deed of 1905, But the trouble with this contention is that Emmer Sisney cannot be treated as a white woman for the purpose of conveying an expectancy, and an Indian for the purpose of securing an allotment. When she applied to be enrolled as a citizen of the Choctaw Nation, she, ipso facto, subjected herself to the restriction upon alienation of Indian land imposed upon all members of the tribe. All who dealt with her, as to land thereafter allotted to her, were charged with knowledge that the act of 1902 declared that such land should not be affected by any contract made before allotment. The deed of 1905 was therefore a nullity, and did not estop her or her assigns from showing that it had been made in direct violation of the statute. For, to permit an Indian's deed, void when made, to operate as a conveyance of title to lands subsequently allotted, would be to disregard the express language of the statute and defeat the protective purposes for which the law was passed. Starr v. Long Jim, 227 U. S. 624, 57 L. Ed. 675, 33 Sup. Ct. Rep. 358. The result is not changed by the provision of section 642 of Mansfield's Digest that 'if a person, without title, shall convey real estate, and subsequently acquire title, the legal or equitable estate afterwards acquired shall immediately pass to the grantee as if the estate had been in the grantor at the time of the conveyance.' "

Among other decisions supporting the views herein expressed, we quote from the following:

"The facts further show that the day on which he made application for enrollment and to have set apart for him the lands in controversy, that is, on February 15, 1905, he made, executed, and delivered to the defendant Richard C. Adams a warranty deed to the land in question; and that the other defendants in error deraign their title to the land through him. On this state of facts the court held that plaintiffs were not entitled to recover. The court erred. This for the reason that his deed of February 15, 1905, was void: . This for the reason that it was not only made before he had selected his allotment, but before he had been enrolled as a citizen of the Cherokee Nation. Hence he had not even an equitable title to the land in controversy, but the same was a part of the public domain." Vann v. Adams, 63 Okla. 230, 164 Pac. 113.

"(1) The absence of any individual interest prior to allotment in the heirs of a deceased enrolled Indian in whose name lands are allotted for their benefit, pursuant to the Supplemental Choctaw and Chickasaw Agreement of July 1, 1902, and the general spirit and policy of that agreement toward sales of floats or expectancies, invalidate attempts by such heirs to convey the lands before they are actually allotted. (2) The policy of the Supplemental Choctaw and Chickasaw Agreement of July 1, 1902, to permit no conveyance prior to allotment of lands allotted under that agreement in the name of a deceased enrolled Indian for the benefit of his heirs, cannot be evaded by giving effect to a conveyance from such heirs, with warranty or its equivalent, made prior to actual allotment, as a covenant to convey an allotment thereafter to be selected either upon the ground of estoppel or because of any state statute having like force." Mullen v. Pickens, 250 U. S. 590, 63 L. Ed. 1158.

"Where a grantor conveyed, with warranty, a tract of land, to a part of which he had no title, and which part was in the adverse possession of another, and later acquired title to such part, his after-acquired title did not inure to the benefit of the grantee, since the conveyance and warranty of such part to him was void, and invested him with no rights, even as against his grantor, under Ky. St. 1899, secs. 210, 216, providing that conveyances of land in the adverse possession of another are null. and void, and neither party to such conveyance shall have any right of action thereon." Altemus v. Nickell, 115 Ky. 506, 74 S. W. 221, 163 Am. St. Rep. 333.

The judgment of the trial court is affirmed.

KANE, JOHNSON, McNEILL, KENNAMER, and NICHOLSON, JJ., concur.