## PRESBYTERY OF MUSKOGEE, etc., et al. v. WHITAKER, Adm'r.

No. 14000—Opinion Filed Feb. 26, 1924.

(Syllabus.)

**Indians—Possessory Rights in Cherokee Lands—Right to Convey with Reversionary Interest.**

Prior to the act of Congress approved May 31, 1900 (31 Stats. 221), and the act approved July 1, 1902 (32 Stats. 716), ratified by the Cherokee Nation August 7, 1902, the title to lands of the Cherokee Nation belonged in said nation, and no person had such a fee title to said lands as could be conveyed to third parties with a reversionary interest in such conveyancer.

Error from District Court, Mayes County; A. C. Brewster, Judge.

Action between the Presbytery of Muskogee in the United States of America and the First Presbyterian Church of Pryor; W. T. Whitaker and another intervening. Judgment for intervener, and the other parties bring error. Upon death of W. T. Whitaker, cause revived in name of W. J. Whitaker, administrator. Reversed.

George Miller, Jr., and Harry Seaton, for plaintiffs in error.

A. L. Battenfield, for defendant in error.

HARRISON, J. This appeal grew out of the following matters, to wit:

In October, 1896, W. T. Whitaker and wife, by written instrument duly executed, acknowledged, and recorded, donated to the Cumberland Presbyterian Church for church purposes certain lots in the town of Cooyyah, Cherokee Nation, which lots later became and are now lots 14 and 15, block 37, in the town of Pryor Creek, Mayes county, Okla.

Said instrument, together with what is designated as the "Supplement to Conveyance," are as follows:

"Cumberland Presbyterian Memorial Church.

"Know All Men by These Presents: That in memory of our dead baby boy Austin Whitaker, we, W. T. Whitaker, and wife, S. L. Whitaker, have this day donated lot seven (7) in block 57, in the town of Cooyyah, Cherokee Nation, to the Cumberland Presbyterian Church, and agree to build one church house on said lot, the dimensions to

be 32 x 50 feet, and donate said house with said lot to the Cumberland Presbyterian Church, the same to be viz., her property as long as she may choose to retain and use said property for religious purposes. If, however, said church for any cause abandons said lot or ceases to be a body of Christian people, thereby ceasing to occupy said house, then said property shall revert to said W. T. Whitaker and wife, S. L. Whitaker, or their heirs.

"In Witness Whereof, we have hereunto set our hands and seal this 21st day of July, 1894.

"W. T. Whitaker.
"S. L. Whitaker."

"Supplement to Conveyance.

"Know all Men by These Presents: That the above and undersigned donors to the property therein described, do declare this supplement that it is our purpose to conform to the law of the Cherokee Nation and to have the nature of the conveyance that we hold the same under as granted by us by said nation, and that if our purpose is not well expressed we would have it so construed.

"2. We further declare that the personal property on said lot is intended to be donated by us to the said C. P. Church and not to be any part of our estate, but subjection to the law of the nation and not sold to any other than a citizen of said nation, and otherwise to be used as above provided, and in harmony with the spirit set forth in the title held by us from the nation.

"3. We declare further, that it is our purpose, and we hereby bind ourselves, our heirs, administrators or executors to make a warranty deed to the same to the above church, if such changes shall occur as to make such deed possible, provided however, that in the anticipated changes this lot falls to us and is ours to so convey, and if not the personal property thereon is still the property of said church, provided it shall be used for religious purposes, and within the district or county in which it may fall when such changes occur.

"W. T. Whitaker.
"S. L. Whitaker."

Three things are apparent in the foregoing instruments, viz.: That the property in question was donated for church purposes; that when it ceased to be used as such it should revert to donors; and that the right to convey was merely a right which is generally designated as a "possessory right," authorized under the act of the Cherokee Nation approved December 5, 1892.

There is no controversy as to the donor's possessory right, nor as to his authority to convey such right for the purpose mentioned in the foregoing instrument.

It is conceded in the record that subsequent to the execution and delivery of the foregoing instrument, the acts of Congress approved May 31, 1900 (31 Stat. L. 221), and act approved July 1, 1902 (32 Stat. L. 716), ratified by Cherokee Nation August 7, 1902, became effective, by virtue of which the fee title to town lots could be obtained, and it appears that the donor, Whitaker, went to the land office and procured a patent to be issued conveying said lots to the Presbyterian Church. The patent thus procured was issued, not to the donor, Whitaker, but direct to the Cumberland Presbyterian Church, as a corporate entity, without mention of donor, Whitaker, and containing no conditions affecting the fee title in the church; that is, it contained no mention of Whitaker, no condition that it should be used exclusively for church purposes, nor any other purpose, no condition that the title should revert to Whitaker when it ceased to be used for church purposes, but merely conveyed, under the terms and requirements of the act, the fee title to the church.

Later the church, as a parent corporate entity, conveyed the lots in question to the Presbyterian Church of Pryor Creek, without collecting the full amount of the purchase money for such lots, and later it appears that, the First Presbyterian Church having failed to pay the parent corporation the balance due on the lots, suit was brought by the parent corporation (for the purpose of brevity and in order to clearly state the material facts we have elected to designate it as the parent corporation) for the balance of the purchase price, and by stipulation and consent of the parties a judgment was entered for the amount agreed upon and against said First Presbyterian Church. Other things transpired which are immaterial to determination herein and are therefor not mentioned, but later, the date being immaterial, the parent corporation brought suit to set aside the consent judgment theretofore entered into because of fraud and deceit, and to have the title to said lots cleared and decreed in the parent corporation.

At this point, donors, Whitaker and wife, were permitted to intervene and set up their claim that the lots in question having been abandoned by the church for religious purposes, and sold by the church for other than religious purposes, the title under the terms of the original instrument of donation reverted to the donors.

The case went to trial then upon the question of the right of the intervener, donor, to reversion of the title, and was sub-

mitted to the court for determination upon the evidence. The court rendered judgment in favor of interveners, not, as it appears, for his right to reversion of title to the realty, but judgment in his favor for the amount paid by him for the erection of the church house upon the lots and for the amount expended by him in procuring title to the lots in the name of the church, and further decreed that such church property, both house and lots, be sold to satisfy the judgment.

The two corporate entities, viz., the Presbytery of Muskogee in the Presbyterian Church of the United States of America, a corporation, and the First Presbyterian Church of Pryor, a corporation, joined in the appeal and petition in error to this court to reverse said judgment.

Two propositions are presented for reversal:

(1)  Can the intervener claim the property in an action to quiet title?

(2)  The several causes of action of intervener were improperly intermingled.

The first proposition involves the question whether donors, the Whitakers, had any title in or to the lots donated which could be conveyed with a reversionary interest. It will be observed from the instrument of donation that at the time of delivery of same the donors possessed no more than a possessory right to the lots; that the fee title to the lots was at that time in the Cherokee Nation; no individual had title to any portion of the lands, title to which at that time was in the Cherokee Nation as a nation, hence donors had no fee title in the lots donated; they merely had a possessory right, that is, the right to occupy, to build upon, and reside upon such lots, pursuant to an act of the National Council of the Cherokee Nation, approved December 5, 1892, which authorized the Principal Chief of the Cherokee Nation to convey the right to possess, occupy, and use, to the exclusion of all other persons, lots in the towns within the Cherokee Nation, but such right was no more than the right to possess, to occupy, and use to the exclusion of others.

As to whether such right of occupancy, right of possession, could have been conveyed with a reversionary interest, it is unnecessary to decide in this case, for the reason that whatever rights were conveyed to donors by the Chief of the Cherokee Nation under the aforesaid act of the National Council thereof, were terminated by the acts of Congress approved May 31, 1900 (31 Stat. L. 221), and the act approved July 1, 1902 (32 Stat. L. 716), ratified by the Cherokee Nation, August 7, 1902. That is to say, that after the taking effect of the aforesaid acts of Congress and their ratification as aforesaid by the Cherokee Nation, persons possessing lots through a conveyance of possessory rights by virtue of aforesaid act of the National Council of the Cherokee Nation, approved December 5, 1892, had no further title to even a possessory right unless, within the time prescribed by said acts of Congress, they procured a fee title by deed and patent under the provision of said acts of Congress.

The admitted facts are that, subsequent to the passage of said act of Congress and their said ratification by the Cherokee Nation, the Principal Chief of the Cherokee Nation, W. C. Rogers, March 25, 1908, conveyed the title of the Cherokee Nation in said lots to the Cumberland Presbyterian Church of Pryor Creek, Okla., and to its successors, heirs, and assigns, forever; such deed of conveyance was approved by the Secretary of the Interior May 7, 1908, and thereafter under the authority of the acts of Congress, May 31, 1900 (31 Stat. L. 221), and by virtue of the acts approved June 28, 1898 (30 Stat. L. 495), and act of July 1, 1902, a patent was issued to the said Presbyterian Church conveying and vesting the title to said lots in said church and its successors and assigns forever. Neither the original conveyance executed by the Principal Chief nor the final patent approved by the Department of the Interior, November 27, 1915, made any mention of donors, the Whitakers, or contained any conditions as to reversion, but constituted a plain unqualified conveyance of the fee title to said lots in the Presbyterian Church and its successors and assigns forever.

There was no such thing as title to Cherokee lands in an individual member of the tribe, nor any such thing as a right to convey title to any of said lands until the creation of such right by the acts of Congress above referred to, and no means of acquiring title to such lands through an individual member of the Cherokee Tribe, except in the manner prescribed by statute.

Prior to segregation of said lands from the public domain no member of the Cherokee Tribe had a right or interest in such lands subject to conveyance. Bledsoe v. Wortman, 35 Okla. 261, 129 Pac. 841; Robinson v. Caldwell, 55 Okla. 701, 155 Pac. 547; Mullen v. Gardner, 57 Okla. 186, 156 Pac. 1160; Vann v. Adams, 63 Okla. 230, 164 Pac. 113; McDonald v. Ralston, 65 Okla. 277, 166 Pac. 405; Smith v. Williams, 78 Okla. 297, 190 Pac. 555; Stephens v. Cherokee Nation (U. S.) 43 L. Ed. 1041; Franklin v.

Lynch, (U. S.) 56 L. Ed. 954; Gibson v. Chouteau, (U. S.) 20 L. Ed. 534.

Besides, section 53 of the act of Congress approved July 1, 1902 (32 Stat. L. 716), provides that all lots or parts of lots, not exceeding 50 by 150 feet, upon which church houses and parsonages have been erected and which are occupied for church purposes at the time of appraisement, shall be conveyed gratuitously to churches, and authorizes such churches which have other lots enclosed, to purchase such other lots as are necessary to their use, at the appraised value.

In the instant case, the church having acquired patent in conformity with the acts of Congress, such patent containing no conditions or reservation whatever, we are impelled to hold that donors had no reversionary interest in said lots, that the church had unconditioned title in fee to same, and that the trial court erred in rendering judgment in favor of donors, the Whitakers. This being true, it is immaterial whether plaintiffs in error's second proposition be true or not true. The judgment of the trial court is reversed, with directions to render judgment in accord with the views herein expressed.

Reversed.

JOHNSON, C. J., and McNEILL, KENNAMER, COCHRAN, and BRANSON, JJ., concur.