## UNITED STATES v. WALTERS et al.

(District Court, D. Minnesota, Sixth Division. March 23, 1926.)

### No. 138.

1. Indians ⬤⟹15(1)—Conveyance of land by allottee during trust period is void (Act Feb. 7, 1887 [Comp. St. § 4195 et seq.], § 5 [Comp. St. § 4201]).

A conveyance of land by an Indian allottee holding a trust patent under Act Feb. 8, 1887 (Comp. St. § 4195 et seq.) before expiration of the trust period is absolutely null and void under section 5 of the act (Comp. St. § 4201).

2. Indians ⬤⟹27(3)—Purchaser of land from trust allottee not entitled to return of purchase money as condition of setting aside deed (16 Stat. 721).

A purchaser of land from an Indian allottee during the trust period when its alienation is absolutely prohibited by 16 Stat. 721, is not entitled to return of the purchase money as a condition to the cancellation of the deed at suit of the United States.

3. Indians ⬤⟹27(1)—That an act of Congress might have enabled an allottee to deceive a purchaser as to his right to sell his allotment held not defense to suit to set aside the conveyance.

That Congress, by authorizing certain mixed-blood Indians to sell their trust allotments, put it in the power of a full blood to deceive a purchaser and sell his allotment *held* not to constitute a defense to a suit by the United States to set aside the conveyance.

In Equity. Suit by the United States against George Walters and others. Decree for complainant.

Lafayette French, Jr., U. S. Dist. Atty., and James A. Wharton, Asst. U. S. Dist. Atty., both of St. Paul, Minn.

R. J. Powell, of Minneapolis, Minn., for defendants.

JOHN B. SANBORN, District Judge. [1] The lands described in the bill of complaint, which are situated in Becker county, Minn., were, prior to the 21st day of July, 1902, allotted to Shay-now-e-gwon-abe, a full-blood male Chippewa Indian of the White Earth Reservation, and on that date the United States issued to said allottee its trust patent for this allotment, which was recorded in the office of the register of deeds of Becker county, Minn., in Book 28, p. 29. The trust patent was issued pursuant to the Act of Congress of February 8. 1887, c. 119 § 5, 24 Stat. L. 389 (Comp. St. § 4201), which provides:

"Upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such an allotment shall have been made, or, in case of his decease, or his heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: Provided, That the President of the United States may in any case in his discretion extend the period. And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void."

On January 9, 1908, before the expiration of the 25-year trust period, Shay-now-e-gwon-abe executed a warranty deed signed by himself and wife, purporting to convey the lands patented to him to George Walters, one of the defendants, for an alleged consideration of $100, which deed was recorded in the office of the register of deeds of Becker county, Minn., in Book 25, p. 46. George Walters was at that time and is now a Chippewa Indian of the White Earth Reservation, and was also allotted certain lands therein under original allotment No. 185, under his Indian name of Kah-gondaush. He actually paid to Shay-now-e-gwon-abe $800 as the consideration for the deed, which represented the fair value of the lands attempted to be conveyed to him, and this $800 has never been repaid him. On May 27, 1908, Shay-now-e-gwon-abe died. The other defendants are persons claiming under the defendant Walters.

Under the treaty with the Chippewas of the Mississippi, made and concluded at Washington on the 19th day of March, 1867, it was provided:

"And the land so held by any Indian shall be exempt from taxation and sale for debt, and shall not be alienated except with the approval of the Secretary of the Interior, and in no case to any person not a member of the Chippewa Tribe." 16 Stat. 721.

This action is brought by the United States to quiet the title to these lands and to cancel all attempted conveyances thereof.

In the case of Monson v. Simonson, 231 U. S. 341, 34 S. Ct. 71, 58 L. Ed. 260, wherein the validity of a conveyance made before

the expiration of the trust period was questioned, the court held that any conveyance of the land or any contract touching the same, made before the expiration of such period, was absolutely null and void, and that it was the intention of Congress that the title should remain in the United States during the entire trust period.

In the case of Starr v. Long Jim, 227 U. S. 613, 33 S. Ct. 358, 57 L. Ed. 670, the court said:

"Since it is entirely plain, in the case before us, that the title to the lands in question was retained by the United States for reasons of public policy, and in order to protect the Indians against their own improvidence, it follows as matter of course that a conveyance made by one of them, before the title was vested in him pursuant to the act of 1905, was in the very teeth of the policy of the law, and could not operate as a conveyance, either by its primary force or by way of estoppel."

It is clear, therefore, that the attempted conveyance of the allottee in this case to Walters was a nullity.

[2] It is claimed, however, that, before the government of the United States is entitled to have a decree quieting the title, it should repay to the defendant Walters the $800 which he paid to the Indian allottee. This claim is partly based upon the Treaty of 1867, which indicates that such lands may be alienated with the approval of the Secretary of the Interior, to another member of the Chippewa tribe. There is no claim, however, that the Secretary of the Interior ever approved the conveyance in question, and nothing to indicate that he ever would have approved it.

The cases of United States v. Debell et al. (C. C. A.) 227 F. 760, 780, are also referred to. The cases were decided in favor of the government; but in the third case it appeared that the defendant Debell had paid the allottee $2,000 for the land, and the court, in remanding the case, did so with instructions to "render a decree to the effect that on condition that the United States pays to Debell the sum of $2,000 within three months after the entry of the decree, the patent to Clown Woman, her deed to Courtis, and Courtis' deed to Debell be set aside and held for naught; that in case the $2,000 is not thus repaid, the land in controversy be sold at public sale, after due notice, under the direction of the court; that the parties to this suit and all persons claiming under them be thereby estopped from claiming this land, and that the title thereto be confirmed in the purchaser at the sale; that $2,000 of the proceeds thereof be paid to Debell and the remainder thereof to be paid to the United States and held and applied by it to the use and benefit of Clown Woman and her heirs." This action of the court was obviously based upon the fact that the Department of the Interior, in granting an application for a fee-simple deed, contributed to the illegal transaction, and that equity would require the United States, before it was entitled to a cancellation of the patent and deed, to refund the money paid for the land.

In Heckman v. United States, 224 U. S. 413, 446, 32 S. Ct. 424, 56 L. Ed. 820, Justice Hughes, with reference to this question, says:

"It is said that the allottees have received the consideration and should be made parties in order that equitable restoration may be enforced. Where, however, conveyance has been made in violation of the restrictions, it is plain that the return of the consideration cannot be regarded as an essential prerequisite to a decree of cancellation. Otherwise, if the Indian grantor had squandered the money, he would lose the land which Congress intended he should hold, and the very incompetence and thriftlessness which were the occasion of the measures for his protection would render them of no avail. The effectiveness of the acts of Congress is not thus to be destroyed. The restrictions were set forth in public laws, and were matters of general knowledge. Those who dealt with the Indians contrary to these provisions are not entitled to insist that they should keep the land if the purchase price is not repaid, and thus frustrate the policy of the statute."

[3] It is also suggested that the fact that Walter parted with his $800 for this invalid deed was due to the Congress of the United States, shortly prior to the execution of the deed, authorizing the alienation by mixed blood Indians of their allotments on the White Earth Reservation, which put it within the power of the allottee in this instance, by representing that he was a mixed blood, to obtain the money, the status of the Indians of the White Earth Tribe at that time being undetermined. From a moral standpoint, there is much to this contention, but, if a moral wrong was committed by Congress in that regard, it is the body to whom the defendant Walters should apply, and not to the courts. As a matter of law, the deed which he received was a nullity, and the title has at all times remained in the United States of America in trust for Shay-now-e-

gwon-abe and his heirs, as provided by the Act of February 8, 1887 (Comp. St. § 4195 et seq.), and the government has done nothing which would justify a court of equity in requiring that it restore to the defendant Walters what its allottee received from him for the void conveyance.

It follows that a decree must be entered canceling the conveyances referred to in the bill of complaint, and quieting the title to the property in the plaintiff, as prayed for. It is so ordered.