[Civ. No. 5568.   Fourth Dist.   Feb. 4, 1958.]

EMMA SPECTOR, Appellant, v. IONE LOIS PETE, as Administratrix, etc. et al., Respondents.

Irl Davis Brett for Appellant.

Thompson & Colegate, F. Gillar Boyd, Jr., and Arnold Rumwell for Respondents.

GRIFFIN, J.—Plaintiff and appellant brought this action which is set forth in a third amended complaint and supplement thereto (hereinafter referred to as the complaint) for specific performance, to quiet title, and for equitable relief. It is alleged generally that on April 29, 1954, Marcus Pete, Jr., an Indian, and a member of the Palm Springs or Agua Caliente Band of Indians, was the owner of certain lands, to wit: Block 2, Section 14, Township 4 S. R. 4 E., S. B. B. & M., within the Palm Springs Indian reservation; that on said date he entered into a written agreement with the contracting purchasers, jointly, namely, defendants C. W. Miller and wife, Oscar Mandinach and wife, Ronald R. Dunlap and wife, and Dr. W. H. Clarkson and wife, to buy said property as a unit for $78,660; that Marcus Pete, Jr., conditionally agreed therein to submit said transaction to the Secretary of the Interior of the United States, through the district agent at Palm Springs, for approval by the United States, evidenced either by the express written approval or the issuance of a patent direct to the contracting purchasers or by releasing all restrictions imposed by law upon his right to convey through the issuance and delivery to him of a full, unrestricted fee patent, and that such conveyance should be made if and when, and only if and when, the United States issued and delivered a patent to the contracting purchasers, or said Marcus Pete, Jr., received an unrestricted fee patent thereto; that in part performance thereof Pete and the contracting purchasers submitted said transaction to the United States for approval through the district agent; that subsequent thereto. the district agent was instructed by the United States to inform Pete and the others that the United States would require that its patent to the contracting purchasers be made to one individual *only* and that the parties choose and select the person who would become grantee, in trust, for them; that by supplemental agreement in writing, Pete and the contracting purchasers agreed that the total amount should be conveyed by patent from the United States to defendant Miller, and subsequent arrangements would be made between them for the partition of the whole, at the price formerly agreed upon; that immediately thereafter, and in part per-

formance thereof Pete and the contracting parties met with the district agent and agreed in writing, by approving a sketch made by the agent, that such land should be partitioned and separately conveyed to said purchasers, i. e., to plaintiff, a certain described part of Lot 2, and a certain described individual portion thereof to each of the other contracting purchasers and their wives; that subsequent thereto and prior to the partial partition hereinafter alleged, the United States elected not to issue a patent direct to defendant Miller but instead to offer the property free of restrictions to Pete so he could directly consummate said transaction, by issuing and delivering to Pete an unrestricted fee patent to all of said property, and in furtherance thereof it executed and delivered to Pete a fee simple patent to the whole on June 30, 1954; that after receiving said patent Pete, in part performance of the agreement to convey, partitioned said lands by conveying portions thereof to certain of the contracting defendants by grant deeds dated July 29, 1954, and August 5, 1954; that plaintiff performed her part of the agreement and Pete failed and refused to deed the portion claimed by plaintiff, without plaintiff's knowledge or consent, but on August 25, he deeded that portion to one Myra Lewis; that thereafter Pete accepted a deed of trust on this property, dated August 28, 1954, naming Pete as beneficiary; that defendant Myra Lewis was acting for an undisclosed principal, defendant Abe Adelman, her uncle, who had both actual and constructive knowledge of the agreement sued upon and at the time, August 11, this action was pending and lis pendens was of record; that the reasonable value of said property was $78,660, and plaintiff's claimed portion was of the value of $7,500; and that the agreement sought to be specifically enforced was just and reasonable.

Marcus Pete, Jr., died on May 2, 1955, and the action proceeded against defendant Ione Lois Pete, as administratrix. At the time this action originated, each of the contracting purchasers was the separate holder of a lease upon the property agreed to be conveyed by Pete to them, with the possible exception of a 3-foot strip described, which plaintiff alleges other defendants hold without right. As a second cause of action certain other conveyances were alleged to have been made after this action was filed and after lis pendens recorded, involving the same property in which Pete reconveyed the property, including the 3-foot strip, back to the other contracting parties, notwithstanding plaintiff had erected and

was occupying improvements she had placed on the property which she was leasing and agreed to purchase from Pete.

The prayer is that the administratrix be required to specifically perform the contract Pete made with plaintiff and to convey that portion to her which is specifically described; that other defendants be compelled to reconvey to her any portion of that land to which they may claim any interest, to quiet plaintiff's title thereto, and for general relief. A general demurrer to the complaint was, by order of Judge Waite, who heard the argument, sustained without leave to amend. A judgment of dismissal was subsequently signed by Judge Morton. The appeal is from the judgment and order.

It affirmatively appears from the facts alleged in the complaint that Marcus Pete, Jr., was an Indian of the Agua Caliente Band of *Mission* Indians, and was, at the time of the execution of the written instrument to sell the property, in a restricted or incompetent status. (The word incompetent, as thus used, has been judicially defined to mean an Indian whose right to alienate his land is restricted (*United States* v. *Nez Perce County,* [Idaho] 267 F. 495), and who is a ward of the United States Government.) The property he then owned was an Indian Trust patent issued to him pursuant to section 5 of the General Allotment Act [24 Stats. 389, et seq., which is codified as 25 U.S.C. § 348]. By the express terms thereof:

''Upon the approval of the allotments provided for in sections 331 to 334 inclusive, and 336 by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, . . . and that at the expiration of said period the United States will convey the same by patent to said Indian . . . in fee, discharged of said trust and free of all charge or incumbrance whatsoever: . . . *And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void. . . .*'' (Italics ours.)

The main question is whether the conditional agreement, as amended, for the sale of the land was lawful or whether it was null and void *ab initio*. Plaintiff claims it was

lawful or at least voidable and therefore subject to ratification, citing such authority as *Smith* v. *Glo-Fire Co.*, 94 Cal. App.2d 154 [210 P.2d 286.] Defendants argue that by the terms of the statute itself, above quoted, the agreement was null and void and accordingly, as such, would be unenforceable in a specific performance action. In face of the positive language there used and italicized, it does not appear that it could be held otherwise, particularly if the Secretary of the Interior did not give his approval to it. This conclusion is fortified by the decisions in *Sage* v. *Hampe*, 235 U.S. 99 [35 S.Ct. 94, 59 L.Ed. 147]; *United States* v. *Walters*, 17 F.2d 116; *MacRae* v. *Heath*, 60 Cal.App. 64 [212 P. 228]; *Berka* v. *Woodward*, 125 Cal. 119 [57 P. 777, 73 Am.St.Rep. 31, 45 L.R.A. 420]; *Arenas* v. *Preston*, 181 F.2d 62; *United States* v. *Hellard*, 322 U.S. 363 [64 S.Ct. 985, 88 L.Ed. 1326]; *United States* v. *Brown*, 8 F.2d 564; *Probert* v. *Kibby*, 87 Okla. 198 [209 P. 916]; and *Kelley* v. *New State Land Co.*, 115 Okla. 170 [245 P. 988].)

It is plaintiff's position that even if the contract of purchase was void under that statute, voidable, or was lawful, it was ratified by Pete's actions after the issuance of a patent in fee and after the disability was removed by partially executing the agreement in deeding the other portions of said property to the named defendants.

It is the general rule that a contract that is null and void is incapable of being ratified and cannot create an estoppel. (*Butterfield Construction Co.* v. *Federal Land Value Ins. Co.*, 5 Cal.App.2d 16 [41 P.2d 958]; *Industrial Indem. Co.* v. *Golden State Co.*, 117 Cal.App.2d 519 [256 P.2d 677]; *Rideout* v. *Eich*, 100 Cal.App. 135 [280 P. 140]; *Wood* v. *Imperial Irr. Dist.*, 216 Cal. 748 [17 P.2d 128].)

As to the claimed ratification pleaded, there is no indication showing any additional contract or dealings whatever between plaintiff and Pete, after he received his patent on June 30, 1954. If there was a ratification it would necessarily have to be by the Indian himself after attaining competency. The only attempt to plead ratification is that after attaining competency and receiving his patent he sold and deeded several parcels of his land, as above indicated, to other persons. The original written agreement or the amendment to it was not pleaded in haec verba nor was a copy attached to the complaint. Apparently there were many changes made, different from the original written agreement, particularly as to the description of the property, name of the party or parties who were to hold title to the property if and when the patent

was issued, and the method of dividing it between the contracting purchasers.

■ It is a general rule of pleading in a specific performance action that the complaint show the existence of a valid and binding contract with the defendant and one which is specifically enforceable. (49 Am.Jur. p. 182, § 159.)

■ In opposition to this conclusion, plaintiff argues that a later Act of Congress *permitted* conveyance and sale of such an allotment. (The word "allotment" is used interchangeably with a restricted or trust patent.) 34 Stats. 1018, 25 United States Code, section 405, reads in part:

"Any noncompetent Indian to whom a patent containing restrictions against alienation has been issued for an allotment of land in severalty . . . may sell or convey all or any part of such allotment . . . *on such terms and conditions* and under such rules and regulations *as the Secretary of the Interior may prescribe.*" (Italics ours.)

Plaintiff concedes that there is adequate authority holding that an agreement made to sell restricted Indian lands, where the agreement and consummation thereof was made without authority and without knowledge of the Secretary of the Interior, is void, citing *United States* v. *Walters,* 17 F.2d 116 and cases cited, but claims neither she nor defendants have found a case directly in point on the facts here alleged which shows the contract was conditioned on such approval before the conveyance was made and where both the Indian and purchasers immediately complied with its requirements and petitioned for such authority and agreed to abide by all requirements exacted and agreed to defer conveyance until after the restrictions were removed. It is argued that these are the distinguishing factors; that to obtain such consent the Indian must petition the Secretary of the Interior in writing and that it is necessary as a condition precedent to so doing that he have an identified purchaser, identified property which is to be sold, a fixed price, and the terms and conditions of the sale, because it is his duty to exercise discretion as to whether the sale shall be permitted, citing 27 Opinions United States Attorney General, 530 and 541; that there is an alternate method of obtaining the right to sell, to wit: By convincing the Secretary of the Interior so he will, in his discretion, cause a fee simple patent to be issued to the Indian as authorized by 25 United States Code, section 348, *supra*; and that once the fee simple patent has been issued the prior trust and the incidental restriction against aliena-

tion is terminated, citing *Larkin* v. *Paugh,* 276 U.S. 431, 439 [48 S.Ct. 366, 368, 72 L.Ed. 640]. In this connection certain dictum from *Oates* v. *Freeman,* 57 Okla. 449 [157 P. 74, 80], is cited. It reads:

". . . counsel say: 'We want to make plain the distinction between a legal and an illegal act. Deeds, leases, and other instruments affecting restricted lands, which are executed with the intention of obtaining the approval of the Secretary of the Interior, are not illegal, and do not violate any provision of the act of Congress. *These instruments never become valid unless approved,* but after approval they have the same validity as though the instrument had originally covered unrestricted land. On the other hand, instruments made for the purpose of evading the statute, without any intent of procuring the approval of the Secretary of the Interior, fall within the inhibitions of Congress.'

"This may be conceded to be a correct statement of law." (Italics ours.)

It is therefore argued that the Secretary of the Interior approved the sale in the instant case by his actions and that the original agreement then had the same validity as though the parties had conveyed unrestricted land and the contract was subject to specific performance.

In answer to this contention the facts here pleaded clearly show that the Indian, while noncompetent, signed the agreement of April, 1954, which provided in general terms that for the consideration of $78,660, he conditionally, upon the approval of the Secretary of the Interior (which approval was necessary to validate it) would convey to the contracting parties jointly the lands described as a unit; that the approval would be evidenced by express written approval and issuance of a United States patent direct to the contracting purchasers or by releasing all restriction imposed by law upon his right to convey, and that such conveyance should be made only if and when the United States issued and delivered a patent to the contracting purchasers or said Marcus Pete received an unrestricted fee patent thereto.

It might well appear from later enactments of Congress (34 Stats. 1018, "Non-competent Act" March 1, 1907, 25 U.S.C. § 405) and decisions based thereon that, under certain conditions, a noncompetent Indian, prior to the expiration of the trust period, is authorized to sell or convey all or part of his land, *subject to the approval of the* Secretary of the Interior, and *upon such terms and conditions as he may prescribe,* and the secretary is also authorized to approve a deed

of conveyance executed by the allottee and it carries full title, as if fee simple patent had been issued to the allottee. (43 L.D. [1914] I.M.-O.W.-Tan-I.C. pp. 102-103; 48 L.D. [1921] Fort Hall Lands, 455, at pp. 457-458; 40 L.D. [1911] pp. 179-181; *Mott* v. *United States*, 283 U.S. 747 [51 S.Ct. 642, 75 L.Ed. 1385]; *Seber* v. *Spring Oil Co.*, 33 F.Supp. 805, 809.)

It therefore appears that as between the noncompetent Indian and the prospective purchasers, without the approval of the Secretary of the Interior, the agreement was void *ab initio*. Such an agreement only amounted to a proposal and would not be enforceable.

In *Miller* v. *United States*, 57 F.2d 987, it was held that a plan or purpose to acquire lands when they became for sale at a fair price, when approved by the Secretary of the Interior, was not an unlawful "plan and purpose," where the patent was used for the purpose of enabling the Indian to sell the land described in his application. The question here arises as to whether it was approved in accordance with the written agreement of the parties, otherwise it would be unenforceable.

According to the pleadings plaintiff alleged that on April 29, 1954, Pete, in the original agreement, agreed to jointly convey the property to the parties named, as a unit, and for a consideration of $78,660 upon written approval of the Secretary of the Interior, either by the issuance of the fee patent deed to the named purchasers or to Pete, the Indian; that subsequently Pete informed them the secretary required that such patent be issued to an individual and not to the group named and that the parties must select the person who would hold it in trust for them. This in effect was a disapproval of their original agreement. Plaintiff further alleges that a written agreement was then entered into between Pete (who was still noncompetent) and the contracting parties, that the property mentioned should be conveyed to Miller for this purpose and that subsequent agreements would be made between them for the partitioning of the whole and allocating the purchase price of $78,660 among them. (Apparently this modified and changed the terms of the original agreement providing that the patent should be issued to the parties named or to Pete in person.) It then alleged that immediately and in part performance thereof (apparently the amended agreement) Pete, and the contracting defendants met and agreed in writing, by approving a sketch, as to the method of partitioning the described portions each named

party was to have and the price to be paid for such portions. It then alleged that subsequently the Secretary of the Interior did not follow or approve this plan or agreement and elected not to issue a patent direct to Miller, but instead, decided to directly issue and deliver to Pete an unrestricted fee patent to all the property. This was done on June 30, 1954.

It therefore appears that the Secretary of the Interior did not approve the amended agreement as to the method of issuance of the patent and the allocation of the property which agreement modified the original agreement as to the general disposition of the property. Accordingly the agreement, as thus amended and modified, was not specifically enforceable for the reason it was not *approved by the Secretary of the Interior* and was therefore void under the authorties heretofore cited. Likewise, the alleged written agreement, as thus amended, was indefinite. It is claimed by plaintiff that in it there was some mistake or misdescription of the property now claimed by her.

The allegation of part performance of the agreement was based upon the amendment proposed but which was rejected by the Secretary of the Interior. The agreement as amended, not being approved by the Secretary of the Interior, was void and not subject to ratification. (See cases above cited.)

Although the equities of this case strongly favor a recovery by the plaintiff, we conclude that under the pleadings and authorities cited the trial court properly sustained the demurrer without leave to amend.

Judgment of dismissal affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 2, 1958.