[Civ. No. 6385. Fourth Dist. Jan. 11, 1962.]

EMMA SPECTOR, Plaintiff and Appellant, v. CHARLES W. MILLER et al., Defendants and Respondents.

Tenney & Collins for Plaintiff and Appellant.

Leonard A. Bock for Defendants and Respondents.

GRIFFIN, P. J.—Plaintiff and appellant Emma Spector brought this action against defendants and respondents Charles W. Miller and wife, Ethel C. Miller, on July 28, 1958, alleging generally that within four years last past defendants, plaintiff and six other persons, as purchasers, and one Marcus Pete, Jr., an Indian, as seller, entered into a contract for the joint purchase from seller of a parcel of described land in Palm Springs for a total price of $78,660.

An action involving these parties, the Indian and others, was heretofore brought by Spector, seeking to compel the administratrix of the Indian's estate to specifically perform the contract of sale, to quiet title and for other general relief. This court held that since the contract for the sale of the land,

by Pete, was made while he was an incompetent Indian, it was null and void and unenforceable as to him. The facts surrounding this transaction are fully set forth in *Spector v. Pete,* 157 Cal.App.2d 432 [321 P.2d 59] (hearing denied by the Supreme Court), petition for certiorari in Supreme Court of the United States denied, 358 U.S. 822 [79 S.Ct. 36, 3 L.Ed.2d 63] ; and petition for rehearing denied, 358 U.S. 938 [79 S.Ct. 310, 3 L.Ed.2d 311].

Plaintiff's complaint in the instant action then alleges that it was agreed between all the parties to this action that defendant Miller would act as trustee for all of the joint purchasers, including plaintiff, and accept conveyance of title to the realty and would reconvey certain described portions thereof to each set of purchasers; that in direct violation of their implied covenant of good faith and fair dealing, as parties to such joint agreement, defendants: ". . . within four years last past, persuaded and caused said seller to convey separately to said Millers . . ." and one Mira Lewis, plaintiff's portion of the realty which had been agreed to be conveyed by Miller, as trustee, to plaintiff. Damages were sought in the sum of $22,500 for breach of covenant.

On October 29, 1959, plaintiff filed an amended complaint against defendants, bringing in Sara Selma Mandinach and her husband and again alleging the above facts and setting up the claimed contract to sell, dated May 10, 1954. It alleged that Miller was to act as the trustee for all joint purchasers and accept title for them. It further described the property and then alleged that Mira Lewis was the agent of the defendants; that the property that belonged to plaintiff was conveyed to Mira Lewis in her capacity as agent and by her later conveyed to Sara Fox and Carolyn Brown and that the true name of Sara Fox was Sara Mandinach and that Carolyn Brown's true name was Ethel Miller; that the conduct of defendants was fraudulent and made with malicious intent of ousting plaintiff from her property and depriving her of it.

In the second cause of action it is alleged that in addition thereto Mira Lewis, Sara Fox and Carolyn Brown were acting as agents for defendants Abe Adleman, Sara Selma Mandinach and Oscar Mandinach and defendants Miller; that all knew of this agreement alleged and of the Millers' obligation and duty in respect to said lands; and that they conspired on or about June 30, 1954 to convert plaintiff's property to their use in the manner indicated. It is then alleged that defend-

ants concealed these facts from plaintiff and she did not discover them until October 1959 and could not have readily discovered them before that date.

A third cause of action, after incorporating the provisions of the other two causes of action, alleged certain of these defendants brought an unlawful detainer action [Brown et al. v. Spector] to divest plaintiff of her property which was originally agreed to be conveyed to her; that its value has greatly increased and defendants Miller have fenced off said property since October 1955 and plaintiff lost the use of same, all to plaintiff's damages in the sum of $15,000.

The relief sought is general damages, exemplary damages and for an injunction enjoining the further prosecution of the *Brown et al.* v. *Spector* action.

A demurrer to the first amended complaint alleged that it failed to state a cause of action, was uncertain, that each cause of action was barred by the provisions of the statute of frauds and that there was a misjoinder of parties; that each cause of action was based upon an illegal and unenforceable contract with an American Indian; that the second, third and fourth claimed causes of action were added to the complaint by amendment without leave of court and after the statute of limitations had run as to each such cause of action; that if the first cause of action, or any of them, was based upon the theory of a breach of a resulting or constructive trust, such cause of action was barred by Code of Civil Procedure, section 339, subdivision 1, and section 338, subdivision 4; that it was not certain whether the alleged causes of action were based on the contract of May 10, 1954 or of April 29, 1954, or some other writing or agreement; that the facts constituting the fraud were not pleaded and it is not shown why they were not discovered sooner; that the fourth cause of action was barred by the provisions of Code of Civil Procedure, section 338, subdivision 2. Apparently the demurrer was sustained in some respect.

On December 2, 1959, plaintiff filed a second amended complaint, alleging in more detail the claimed agency of defendants and stating that on April 29, 1954, defendants and plaintiff orally agreed and further entered into a written contract, as purchasers, with Pete, as seller, for the joint purchase of the property as described; that Miller, in violation of his duties as trustee, individually and in connection with the others, persuaded the seller to convey separately to Millers and Mira Lewis the property of plaintiff as heretofore stated

and caused said property, originally intended to have been conveyed to plaintiff, to be conveyed through mesne conveyances to themselves as agents for plaintiff.

True copies of the written agreement of April 29 and May 10, 1954, are incorporated into the complaint by reference. It is then alleged, by reason of the agreements and said joint ventures, that defendants and plaintiff occupied a fiduciary relationship to one another and Miller was trustee for plaintiff; that plaintiff believed defendants would deal fairly with plaintiff in all things and defendants refused to convey to plaintiff any interest in the land; that plaintiff had no knowledge that her described land had been conveyed to Mira Lewis and others as agents for defendants Miller until October 1959 and defendant actively concealed said facts from plaintiff by the use of false names and by the use of said agents. Fraud, oppression and malicious intent are generally alleged.

In the second cause of action, as in all causes of action stated, the provisions of the first cause of action are incorporated therein. It is then alleged that plaintiff built buildings and made improvements on the property and was damaged by reason of the fraud perpetrated by defendants. The third cause of action alleged conspiracy of defendants, on or about June 30, 1954, to convert plaintiff's property to their own use as alleged in the first cause of action. The fourth cause of action involves the unlawful detainer action as heretofore related. The fifth cause of action recites the decision of *Spector* v. *Pete, supra,* 157 Cal.App.2d 432, rendered by this court on February 4, 1958, and plaintiff prays that plaintiff be declared to be the owner of the property originally agreed to be conveyed to plaintiff; that defendants hold title only in trust, as constructive trustees, and that they be required to execute a proper deed to plaintiff, or, in the alternative, plaintiff to obtain general and punitive damages. Plaintiff seeks to enjoin further proceedings of the action entitled *Brown et al.* v. *Spector.*

The written agreement, dated April 29, 1954, was an offer of the "undersigned" which included the Millers, Mandinachs and plaintiff to purchase from Marcus Pete certain described real property for $78,660, plus interest, taxes, etc., and it recited that buyers acknowledge and affirm that no representations or warranties as to title have been made by seller; that seller is an American Indian desirous of obtaining title to said land from the United States Government so as to enable him to convey to buyers; and that seller is unable to

insure the buyers that title insurance can be obtained. Buyers acknowledge that sale was subject to the following leases: Sandoval, Fred and Blanche (expired July 31, 1958) ; Field, Stephen and Marianne (expired September 30, 1956) ; that buyers were all lessees who have made substantial improvements on this land and who hold valid leases which automatically terminate upon delivery of fee patent. It was there agreed and understood by buyers and seller that all advance lease rents were to be withheld from the down payment and refunded to each lessee; that each prospective buyer was willing and able to deposit $1,000 in escrow upon approval of this offer by the area director; that this group of lessees were representing themselves without agent or broker and would personally handle all escrow details. This agreement was not signed by the Indian Pete. The next agreement, dated May 10, 1954, was directed to the Area Director, Bureau of Indian Affairs, and signed by the same parties, as well as by Marcus Pete. It provides:

"We, the undersigned proposed buyers of the allotment of Marcus Pete, P.S. 58, described as Block 2, Section 14, T4S, R4E, S.B.B.&M. do hereby state and declare that Charles W. Miller is the appointed and approved representative of the undersigned purchase group to receive the Fee Patent title in his name.

"Further, that escrow instructions will contain and define the detailed method of the partitioning among the buyers involved by deed from the representative."

The court ordered the general demurrer sustained, allowed 20 days to amend and denied the preliminary injunction. The reason expressed by the trial judge for the ruling is indicated to be:

"1. Constructive Trust only possible theory.

"a. Not applicable to Lewis purchase despite subsequent events because plaintiff's refusal removed, purchase limitations, if any.

"b. If applicable to Miller purchase, 3 year S of L [Statute of Limitations] has run. (1st Amend. Comp. 60090, filed 3/7/55 alleges: Miller sale, 7/29/54, Lewis, 5/25/54; hence plaintiff's refusal between those dates & after knowledge of Miller sale. This action filed 7/24/58.)

"2. In Calif. re: Constructive Trusts of real property absent.

"a. Written essentials: parties, price, description or prior existence of trust, credit or similar conduct, S. of F. [Statute

of Frauds] applies; (*Mazzera* v. *Wolf,* 30 Cal.2d 531 [183 P.2d 649])''

It should be here noted that the complaint up to this time makes no mention of plaintiff's claimed refusal to accept a deed to the property. This claimed fact was made in defendants' affidavit in opposition to issuance of injunction. It was a factual question and could not be properly decided on a demurrer to the complaint. (*A. E. Bell Corp.* v. *Bell View Oil Syndicate,* 24 Cal.App.2d 587 [76 P.2d 167]; *National Auto. Ins. Co.* v. *Winter,* 58 Cal.App.2d 11 [136 P.2d 22]; 39 Cal.Jur.2d sec. 157, p. 227.)

A third amended complaint filed January 19, 1960, alleged generally the claimed agency, as above, alleged the claimed agreements of April 29, 1954, and May 10, 1954, the description of the property, intentional violation of Miller's duties as trustee, individually and in conjunction with others, alleged the particular acts heretofore indicated, the claim of fiduciary relationship and its violation, and alleged deceit and concealment on the part of defendants and lack of knowledge of facts by plaintiff until October 1959. There is here noted a reference by plaintiff to some claimed offer of Miller, as trustee, to have Pete deed a portion of the land claimed by plaintiff on condition plaintiff waive any right to the whole amount claimed by her. The second cause of action alleged fraud, oppression and malice in depriving plaintiff of her land and converting it to the use and benefit of defendants. The third cause of action charges a conspiracy of defendants to do these acts, and the fourth cause of action seeks to enjoin defendants from proceeding with the unlawful detainer action until this action is tried. It contains the same prayer for relief as set forth in the second amended complaint. The demurrer to the third amended complaint was sustained without leave to amend. A judgment of dismissal followed.

It is an established rule of law that where a person agrees in writing to purchase property for several parties and subsequently acquires the said property for himself, he holds said property as a constructive trustee for the benefit of his principals. The breach of the fiduciary duty is sufficient to raise a constructive trust. (*Stromerson* v. *Averill,* 22 Cal.2d 808 [141 P.2d 732]; *Edwards* v. *Edwards,* 90 Cal.App.2d 33, 39 [202 P.2d 589]; *Walter H. Leimert Co.* v. *Woodson,* 125 Cal.App.2d 186, 189 [270 P.2d 95]; *South* v. *Wishard,* 146 Cal.App.2d 276 [303 P.2d 805]; Rest., Restitution, § 194, pp. 797-798; 4 Witkin, Summary of Cal. Law, p. 2970.) Civil

Code, section 2223, defines involuntary trustee as one who wrongfully detains a thing for the benefit of the owner. Section 2224 thereof provides that:

"One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

A fiduciary who purchases from a third person for himself individually property which it is his duty to purchase for the beneficiary holds it upon a constructive trust for the beneficiary. (Rest., Restitution, §§ 190, 194, pp. 780, 795.)

Although the agreement and offer dated April 29, 1954 was null and void and unenforceable as against the Indian for the purpose of specific performance (see *Spector* v. *Pete, supra,* 157 Cal.App.2d 432), it cannot be said that prospective purchasers alone, as was done in the instant case, cannot agree that if and when title is vested in the Indian and he is entitled to convey it, and does convey it, as agreed upon, the parties would not be able to enforce their rights as between the purchasers. In *Miller* v. *United States,* 57 F.2d 987, it was held that a plan or purpose to acquire lands when they became for sale at a fair price, when approved by the Secretary of the Interior, was not an unlawful "plan and purpose," where the patent was used for the purpose of enabling the Indian to sell the land described in his application. In *Oates* v. *Freeman,* 57 Okla. 449 [157 P. 74, 80], it is said:

" 'We want to make plain the distinction between a legal and illegal act. Deeds, leases, and other instruments affecting restricted lands, which are executed with the intention of obtaining the approval of the Secretary of the Interior, are not illegal, and do not violate any provision of the act of Congress. These instruments never became valid unless approved, but after approval they have the same validity as though the instrument had originally covered unrestricted land. On the other hand, instruments made for the purpose of evading the statute, without any intent of procuring the approval of the Secretary of the Interior, fall within the inhibitions of Congress.' "

The contracts under scrutiny in the instant case certainly contemplate the approval of the Secretary of the Interior. The offer of April 29, 1954, describes the Indian Marcus Pete as "desirous of obtaining title to said land from the United States Government as will enable him to convey to

buyers'' and the agreement between the plaintiff and the prospective buyers and defendant Charles W. Miller may well be considered, as between them, a contract creating the relationship of principals and agent authorizing and directing defendant Miller as the agent of the prospective buyers to receive on their behalf the fee patent title in his name when and if the Indian Marcus Pete was authorized by the Secretary of the Interior to make such conveyance. Hence, it would appear to follow that the contracts were not, as between the purchasers, necessarily illegal. Had Pete seen fit to have made conveyances directly to each of the prospective buyers, after approval by the Secretary of the Interior, such conveyances unquestionably would be legal and binding and not in violation of the act of Congress. In view of the uncontroverted fact pleaded that the Indian Marcus Pete did convey the property to defendant Charles W. Miller when he became competent to do so, it may logically and reasonably be inferred that he was doing so in compliance with his acceptance of the agency created by the agreement of May 10, 1954. ▇▇ Plaintiff concedes that a gratuitous agent cannot be compelled to perform his undertaking, but if the agent actually enters upon performance he must obey instructions and he is bound to exercise the utmost good faith in dealing with his principal. (*McPhetridge* v. *Smith,* 101 Cal.App. 122 [281 P. 419].)

▇▇ An agent is a fiduciary. His obligation of diligent and faithful service is the same as that imposed upon a trustee. (Civ. Code, § 2322, subd. 3; *Rezos* v. *Zahm & Nagel Co.,* 78 Cal. App. 728 [246 P. 564]; *Webb* v. *Saunders,* 79 Cal.App.2d 863 [181 P.2d 43].) ▇▇ Under the general rule against self-dealing by a fiduciary, an agent authorized to purchase certain property for his principal cannot purchase it for himself instead. (*Sands* v. *Eagle Oil & Refining Co.,* 83 Cal.App.2d 312, 320 [188 P.2d 782].) If he does so, he holds it as a trustee for his principal. (*Hardenbergh* v. *Bacon,* 33 Cal. 356.)

▇▇ It therefore might well appear that Miller was the agent for all principals; that in acting as such agent, he did so under the agreement executed; and that he received the property as such agent or trustee and distributed the property of plaintiff in violation of his trust. While there may be a complete defense to these allegations of plaintiff's complaint, such defense cannot be here considered on the question of the sufficiency of the complaint to state a cause of action in this respect.

The remaining question therefore is whether such a cause

of action is barred by the provisions of the statute of limitations, Code of Civil Procedure, section 339, subdivision 1, section 338, subdivision 4. Code of Civil Procedure, section 343, appears to be here applicable.

''To enforce a resulting trust the action must be commenced within 4 years after repudiation of the trust. If an action to impose a constructive trust is based on fraud or mistake, it is governed by the 3-year statute applicable to actions for relief on the ground of fraud or mistake, and is commenced in time if the complaint is filed within 3 years after discovery of the facts constituting the fraud or mistake. But where the gravamen of the action is not fraud, and the action has as its sole purpose the establishment of a trust, . . . it is controlled by the 4-year provision governing actions not otherwise provided for.'' (31 Cal.Jur.2d § 141, pp. 571-572.)

Under the pleading and record here involved, it is claimed that in partial performance of the agreement, Pete, the Indian, on July 29, 1954, by virtue of undue influence by Miller on the Indian, deeded certain portions of the property to defendants Miller and other contracting parties; including a 3-foot strip claimed by plaintiff, and on August 5, 1954, he conveyed other portions of the property to other contracting defendants (excepting plaintiff who made a downpayment of approximately $1,250) by grant deed; that on August 25, 1954, defendants Miller caused Pete to purportedly convey a portion of the property to Mira Lewis by grant deed on September 3, 1954; that Mira Lewis was then acting as an undisclosed principal for defendant Abe Adelman, her uncle, and both had constructive knowledge of the former agreement.

If, as plaintiff claims, the action is grounded in fraud, the applicable statute is Code of Civil Procedure, section 338, subdivision 4 (three years) and the statute began to run in October 1959 when plaintiff claims she first discovered the fraud. (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 436 [159 P.2d 958]; *Blair* v. *Mahon*, 104 Cal.App.2d 44 [230 P.2d 832]; *Neilsen* v. *Neilsen*, 216 Cal. 150 [13 P.2d 715].)

The third amended complaint directly alleging fraud was filed on January 19, 1960, well within the three-year period. In *Siem* v. *Hjelm*, 49 Cal.App.2d 148 [121 P.2d 87], it was held that if the action is for wrongful conversion of the trust property, the statute begins to run either from the actual date of the conversion or the date when the claimant acquired actual or constructive knowledge of the conversion. (31 Cal.

Jur.2d § 138, pp. 565-569.) ▉ The only way a voluntary trustee can set the statute of limitations in operation in his favor is by a distinct act of repudiation amounting to a denial of the existence of the trust. No mere tacit failure to perform can be held to amount to such repudiation. (*England* v. *Winslow*, 196 Cal. 260 [237 P. 542] ; 31 Cal.Jur.2d § 138, p. 568.)

▉ The transfers affecting plaintiff's claimed property were on July 29, 1954 and August 5, 1954. The original complaint was filed on July 28, 1958. It is alleged in the third amended complaint that discovery of the facts as to the conversion by the trustee was not until October 1959. As to the truth of these allegations, we are not here concerned. In testing the sufficiency of a complaint by demurrer, the facts pleaded are presumed to be true. (*United B. & T. Co.* v. *Fidelity & Deposit Co.*, 204 Cal. 460 [268 P. 907] ; *Kraner* v. *Halsey*, 82 Cal. 209 [22 P. 1137] ; 39 Cal.Jur.2d § 156, p. 226.)

We therefore conclude that the demurrer was improperly sustained without leave to amend and the dismissal was unauthorized.

Judgment reversed.

Shepard, J., and Coughlin, J., concurred.