Filed 12/2/13  Estate of Alva CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Estate of ANICETO REYES ALVA, Deceased. | 2d Civil No. B243370 (Super. Ct. No. 56-2010-00367595-PR-LA-OX) (Ventura County) |
| CRISTINA ALVA, as Administrator, etc.,<br><br>    Petitioner and Appellant,<br><br>v.<br><br>ROGELIO ALVA et al.,<br><br>    Objectors and Respondents. | |

        The decedent's second wife, Cristina Alva, appeals from the order on a probate petition directing her, as the administrator of his estate, to transfer certain real property to the decedent's son, Rogelio Alva, and daughter-in-law, Judy Alva.

        Unbeknownst to Cristina, the decedent partly sold and partly gifted the property to Rogelio and Judy years before his death.[1]  Substantial evidence supports the probate court's finding that this agreement was enforceable, and that a resulting trust arose when Cristina acquired title to the property.  As the resulting trustee, Cristina had a

---

    [1] Because all of the parties share the same last name, we refer to them by their first names to avoid confusion.

duty to transfer the property to Rogelio and Judy as the beneficiaries.  The court also correctly found that Rogelio and Judy's claim was timely.  (Code Civ. Proc., § 343.)[2]  We affirm.

FACTS AND PROCEDURAL BACKGROUND

In 1967, the decedent, Aniceto Alva, and his first wife, Maria Alva, purchased a family residence located at 1312 West Juniper Street, Oxnard, California (Residence), taking title in joint tenancy.  The couple had a son, Rogelio, and an adopted son, who died.

Rogelio and Judy began living in the Residence when they married in 1982.  At that time, the Residence was a single-family dwelling with four bedrooms and two baths.  The couple paid no rent or utility expenses.  A year later, they moved into an apartment.

In 1986, Maria won $50,000 in the lottery.  She and Aniceto decided to build a "granny flat" on the Residence by using some of the lottery winnings plus a $21,000 loan from Bank of America (BofA), secured by a deed of trust on the property.  The granny flat, which was attached to the back of the Residence, had its own kitchen, bedroom, bathroom and front door.  The main part of the Residence could be accessed from a bedroom door.

Rogelio and Judy moved into the granny flat in 1987.  They made all of the $235.47 monthly payments due on the $21,000 BofA loan.  Rogelio claimed his parents said on at least one occasion that if he and Judy made the payments, they would "be entitled to own" the granny flat.  The agreement was not memorialized in writing.  When the loan was paid off in 2002, Rogelio and Judy believed they owned the granny flat.

In 1991, Rogelio and Judy's daughter started a fire in the granny flat that also burned the principal part of the Residence.  To rebuild the Residence, including the granny flat, Aniceto and Maria used insurance proceeds plus a $15,000 loan from BofA,

---

[2] Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

secured by a deed of trust on the property. Maria died before the reconstruction was completed.

After reconstruction, Aniceto moved back into the main part of the Residence, and Rogelio, Judy and their children returned to the granny flat. In 1993, Aniceto started living with Cristina, whom he married the following year. Between 1991 and 2003, Aniceto paid all utilities, tax bills and insurance on the Residence. He also made the payments on the $15,000 reconstruction loan. Rogelio and Judy continued to make the $235.47 monthly payments on the original $21,000 loan, but did not pay any other expenses for the granny flat. After that loan was paid off in 2002, they lived in the flat for free until a dispute arose with Aniceto.

In 2003, Aniceto demanded that Rogelio and Judy start paying rent for the use of the granny flat. Rogelio refused, citing his belief that they had purchased the granny flat by paying off the loan. Following an argument, Aniceto offered to reimburse Rogelio and Judy for the money spent on that loan to allow them to purchase their own home. Although Rogelio and Judy looked at homes, they could not afford one in Ventura County. They considered moving to Arizona, where homes were more affordable.

To dissuade his only remaining child from moving away, Aniceto told Rogelio and Judy he wished to "gift" them his house, conditioned upon his right to remain in the Residence until his death, and Cristina's right to remain there for a few months thereafter. Rogelio and Judy agreed, and a few weeks later the three of them went to BofA to obtain an $80,000 equity line of credit using the Residence as collateral. Aniceto and Rogelio were co-borrowers on the loan. Only Aniceto's name was on the deed of trust.

Following that meeting, Aniceto gave Judy an envelope with the original 1967 grant deed for the Residence, plus the new loan contract and deed of trust, and said: "This is yours." Aniceto used the $80,000 equity line of credit to pay off the balance on the $15,000 reconstruction loan, and deposited the remaining $75,265.12 into an account he held jointly with Cristina. Cristina was not informed of Aniceto's agreement with Rogelio and Judy. She knew Rogelio was solely responsible for the $80,000 loan, but

was told it was because he had never paid any rent. She claimed Aniceto told her he was planning to sell the Residence when the market improved and move with her to Texas or Mexico.

Rogelio and Judy believed, however, that they owned the Residence, subject to Aniceto's life estate and Cristina's right to remain in the Residence for a few months after his death. Consistent with that belief, they made the monthly payments on the $80,000 loan and also paid the utility bills. Rogelio and Judy paid half the yearly property tax bill; Aniceto paid the other half. They also split the cost of the property insurance. Rogelio and Judy did not understand that the loan documents were insufficient to grant them legal title.

Aniceto died intestate on January 24, 2009. His only purported asset was the Residence, including the granny flat. Disputing Rogelio and Judy's claim to the Residence, Cristina initiated a probate proceeding. On September 13, 2011, Rogelio and Judy filed a petition under Probate Code section 850 for an order directing the administrator to convey the Residence to them. Following a three-day trial, the probate court granted the petition.

The court found that Rogelio and Judy "cut a deal with Aniceto [and Maria] to buy the granny flat, even though it wasn't on a legal parcel, based on the payment of the [BofA] mortgage. The agreement was fully executed in that [they] made all payments until the loan was paid off in full. As a result of that agreement, payments and reliance, [they] acquired an equitable interest in the granny flat." It also found that "[i]n 2003 Aniceto . . . determined that he would sell the balance of the [Residence] to [Rogelio and Judy] in exchange for [their] agreeing to pay and paying the $80,000.00 loan that was taken out from [BofA] in 2003 plus paying all the utilities and one-half of the real property taxes. The agreement was part for consideration and part gift from Aniceto . . . ." The court found that Aniceto "kept it a secret from his wife, Cristina, perhaps for purposes of domestic tranquility. But regardless of a nondisclosure to the wife, it doesn't negate Aniceto's right to cut the deal . . . ."

4

The probate court concluded that Rogelio and Judy had established, by clear and convincing evidence, that a resulting trust had been created for their benefit. It also ruled that under *Estate of Yool* (2007) 151 Cal.App.4th 867, the resulting trust claim did not assert an oral promise or agreement and thus was subject to the four-year statute of limitations in section 343. The court reserved its determination of the amount to which Cristina is entitled for paying certain expenses related to the Residence. Cristina appeals.

DISCUSSION

*Standard of Review*

The question of whether a trial court applied the correct statute of limitations under the facts before it is subject to de novo review. (*Board of Retirement v. Lewis* (1990) 217 Cal.App.3d 956, 964; *Stoltenberg v. Newman* (2009) 179 Cal.App.4th 287, 292.) The court's factual findings are reviewed under the substantial evidence standard. (*Mealy v. B–Mobile, Inc.* (2011) 195 Cal.App.4th 1218, 1223.) We view the evidence in the light most favorable to the judgment and accept as true all evidence tending to support the judgment, including all facts that reasonably can be deduced from the evidence. We must affirm the judgment if an examination of the entire record viewed in this light discloses substantial evidence to support the judgment. (*Ibid.*)

*Statute of Limitations*

Cristina contends the probate court incorrectly determined that Rogelio and Judy's claim of resulting trust was timely. She asserts that because the petition raising the claim was filed more than two years after Aniceto's death, it was barred under either the one-year limitations period in section 366.2, subdivision (a), or the two-year period in section 339, subdivision 1. Case law does not support this assertion.

A resulting trust occurs "[w]hen a transfer of real property is made to one person, and the consideration therefor is paid by or for another." (*In re Marriage of Ruelas* (2007) 154 Cal.App.4th 339, 342.) "[A] trust is presumed to result in favor of the person by or for whom such payment is made" in order "'. . . to enforce the intentions of the parties. . . .'" (*Ibid.*) A resulting trust "arises by operation of law, without an expressed intent, and . . . the resulting trustee ordinarily has no duty other than to transfer

5

the property to the person entitled." (*Ibid.*) "In other words, the relationship between the resulting trustee and beneficiary arises where one, in good faith, acquires title to property *belonging to another.* The law implies an obligation on the part of the one in whom title has vested to hold the property for the owner's benefit and eventually convey it to the owner." (*Estate of Yool*, *supra*, 151 Cal.App.4th at p. 874.)

"The applicable statute of limitations on an action to establish a resulting trust is the four-year statute found in . . . section 343."[3] (*Estate of Yool, supra,* 151 Cal.App.4th at p. 875; accord, *Spector v. Miller* (1962) 199 Cal.App.2d 87, 95-96.) *Estate of Yool* specifically rejected the argument that section 366.2, subdivision (a), applies to a resulting trust. (At pp. 875-876.) That statute provides that "[i]f a person against whom an action may be brought on a *liability of the person* . . . dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death . . . ." (Italics added.)

*Estate of Yool* observed that section 366.2's reference to "liability of the person" requires that the decedent be personally liable to the claimant for the statute to apply. (151 Cal.App.4th at pp. 875-876.) A claim for the imposition of a resulting trust is not a claim upon which the decedent would be personally liable because such liability requires that the claimant be able to seek satisfaction of the debt from the decedent's assets. By definition, a resulting trust does not contain the decedent's assets. (*Id.* at p. 874.) "[T]he [resulting] trustee holds title, *but does not own* the property in question, [and thus] there is no issue of personal liability or resort to the trustee's assets. A resulting trust arises by operation of law [citation] and does not implicate the personal liability of the purported trustee. Rather, the trustee's sole purpose is to hold or convey the property according to the beneficiary's demands." (*Id.* at pp. 875-876.)

*Spector v. Miller, supra,* 199 Cal.App.2d at pages 95-96, similarly determined that section 343 applies to a claim of resulting trust. In so doing, it rejected the assertion that such claims are governed by the two-year limitations period for breach

---

[3] Section 343 provides that "[a]n action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

6

of oral promises in section 339, subdivision 1.**4**  The court observed that "'. . . where the gravamen of the action is not fraud, and the action has as its sole purpose the establishment of a trust, . . .  it is controlled by the 4-year provision governing actions not otherwise provided for.'  [Citation.]"  (*Spector,* at p. 96.)

Based on these authorities, the probate court properly applied section 343 to assess the timeliness of Rogelio and Judy's petition.  Under that section, the limitations period did not begin to run until a demand was made on Cristina, as trustee, and she refused to account for the property or convey it.  (*Estate of Yool, supra,* 151 Cal.App.4th at p. 875 ["The statute of limitations does not begin to run against a voluntary resulting trust in the absence of repudiation by the trustee, that is, until demand has been made upon the trustee and the trustee refuses to account or convey"].)  It is undisputed that Cristina did not know about Rogelio and Judy's claim to the Residence until after her husband's death.  Even assuming the demand was made and rejected by Cristina on the date of his death, the petition was filed less than three years later, well within the four-year period.

*Resulting Trust*

Cristina suggests the evidence was insufficient to support the probate court's imposition of a resulting trust.  Pointing to Rogelio and Judy's failure to explain their lack of action on the alleged promises regarding the granny flat, she asserts the evidence does not support the court's conclusion that two distinct contractual transactions justified the resulting trust.  She claims that "[w]hile it may seem conceptually very tidy and clean to suppose that the $80,000.00 loan really covered only the front portion of the Residence, and not the granny flat, no one testified to this."

Cristina mischaracterizes the trial court's decision.  The evidence established that when Aniceto demanded that Rogelio and Judy begin paying rent in 2003, they reminded Aniceto of his prior promise to grant them the granny flat if they repaid the $21,000 loan, which they did.  Instead of refuting this fact, Aniceto offered to

---

**4** Section 339, subdivision 1, states that, with certain exceptions, the statute of limitations for "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing" is two years.

reimburse them for the loan payments to allow them to purchase a separate home.  In other words, he offered to "buy out" their interest in the granny flat.  When this proved unfeasible, Aniceto offered to partially sell and partially gift the Residence to them subject to certain conditions, including repaying the $80,000 loan, granting him a lifetime estate and allowing Cristina to remain in the Residence for a few months after his death.

Aniceto's offer did not contemplate that anyone other than Rogelio and Judy would be entitled to the Residence or granny flat upon his death.  Indeed, it contemplated that Cristina would take her belongings and move out.  Substantial evidence supports the trial court's determination that Rogelio and Judy's acceptance of Aniceto's offer created an enforceable agreement as to the entire property, and that a resulting trust occurred when title was transferred to Cristina instead of to them.  (*In re Marriage of Ruelas, supra,* 154 Cal.App.4th at p. 342; *Estate of Yool*, *supra*, 151 Cal.App.4th at p. 874.)  Cristina has not demonstrated error.

DISPOSITION

The order is affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.


8

Glen M. Reiser, Judge

Superior Court County of Ventura

_____

Law Office of Michael A. Morrow, Michael A. Morrow for Appellant.

Nordman Cormany Hair & Compton, LLP, Michael C. O'Brien, Marina L. Lang for Respondents.